[No. 32153.  Department One.  February 24, 1953.]

THE CITY OF TACOMA, *Appellant,* v. WILLIAM D. PERKINS
*et al., Defendants,* B. F. PAFF *et al., Respondents.*[1]

[1]Reported in 253 P. (2d) 957.

*Clarence M. Boyle, Dean Barline, Horace G. Geer, Fred C. Dorsey,* and *W. L. Brown, Jr.,* for appellant.

*Eggerman, Rosling & Williams,* for respondents.

WEAVER, J.—The problem presented is this: Does certain money belong to the local improvement guaranty bond fund of the city of Tacoma, or should it be distributed between that fund and the city, as statutory trustee of local improvement district No. 347?

The facts are not in dispute. Local improvement district No. 347 was established by ordinance of the city of Tacoma in 1910. The improvements were made; assessments were levied against the property in the district; bonds were issued, to mature in 1920. A portion of the local improvement district assessments became delinquent. Petitioners are now the owners of some of the unpaid bonds.

In 1921 and 1925, the city established a local improvement guaranty fund pursuant to statute. This fund could not operate for the benefit of the bonds of district No. 347, which had been organized in 1910. It did, however, operate for the benefit of the bonds of local improvement district No. 5031, which was established by the city in 1928. This cause concerns properties included within the boundaries of both districts.

In 1927, the city of Tacoma acquired certain of the properties by foreclosure of the delinquent assessments of district No. 347. In 1928, the assessment liens of district No. 5031 attached to all of the properties here involved.

We interrupt our delineation of the facts at this point to consider what the result of a sale of the properties by the city would have been under the facts already set forth. We do this because reference to the statutes under which the city might have proceeded is necessary for an interpretation of the statutes determinative of our problem. Such a sale would have been controlled by chapter 275, § 4 of the Laws of 1927, p. 659, Rem. Rev. Stat. (Sup.), § 9384 (see RCW 35.53.030), which provides that:

"Any city or town may at any time after deed is issued to it under and by virtue of any proceedings mentioned in this act lease or sell or convey any such property at public or private sale for such price and on such terms as may be determined by resolution of the city or town council or other legislative body, any provisions of law, charter or ordinance to the contrary, notwithstanding, *and all proceeds resulting from such sales shall ratably belong to and be paid into the fund or funds of the local improvement district or districts concerned* after first reimbursing any fund or funds having advanced any moneys on account of said property." (Italics ours.)

The proceeds of the sale would have been distributed prorata between district No. 347 and district No. 5031.

However, at this time, the properties were not sold by the city. In 1929, the city instituted this cause pursuant to chapter 142, p. 362, Laws of 1929; Rem. Rev. Stat., § 9384-1 (see correctional notation, Rem. Rev. Stat. (Sup.), § 9384 (cf. RCW 35.53.040 et seq.)). On February 7, 1930, the city was authorized to proceed as trustee in receivership of the properties of district No. 347 in accordance with the statute.

In 1937, Pierce county acquired title to the properties involved (except one tract, which exception we notice no further) by the foreclosure of delinquent general taxes. It took and held the lands, not in its proprietary capacity, but in trust for the state and the various taxing municipalities within which the land lay. *State ex rel. King County Water Dist. v. Stacy,* 10 Wn. (2d) 248, 254, 116 P. (2d) 356, and cases cited.

Again we digress, for the same reason, to consider the statute under which the county might have sold the properties. The controlling provision is Rem. Rev. Stat., § 9393 (cf. RCW 35.49.160), which provides in part:

"In any case where any property shall be struck off to or bid in by the county at any sale for general taxes, and such property shall subsequently be sold by the county, the proceeds of such sale shall first be applied to discharge in full the lien or liens for general taxes for which the same was sold, and the remainder, or such portion thereof as may be necessary, *shall be paid to the city to discharge all local assessment liens upon such property,* and the surplus, if any, shall be distributed among the proper county funds; . . ." (Italics ours.)

Thus, had the county sold the properties, the liens of both local improvement districts would have been transferred by the statute from the properties to the money acquired by the resale (*Tacoma v. Fletcher Realty Co.,* 150 Wash. 33, 272 Pac. 43; see *Moe v. Brumfield,* 182 Wash. 608, 47 P. (2d) 847), and the individual purchaser would have taken title free of all local improvement assessments then due.

*Thestrup v. Grays Harbor County*, 12 Wn. (2d) 545, 122 P. (2d) 797, and cases cited.

It is obvious that, had the properties been sold by the city after foreclosure of local improvement district assessments, the proceeds would have inured to the benefit of local improvement district No. 347, local improvement district No. 5031, and any other taxing district encompassing the properties. Rem. Rev. Stat. (Sup.), § 9384. Had the properties been sold by the county after foreclosure of general taxes, the proceeds, over and above the general taxes, would have inured to the benefit of the same districts. Rem. Rev. Stat., § 9393.

Between 1938 and 1946, there were no funds in district No. 347 nor in its receivership. There were unpaid assessments of district No. 5031 against all of the properties; there were outstanding unpaid bonds of that district. During this period, the city reacquired the properties by paying to Pierce county the face amount of the general taxes and costs for which the county had foreclosed. In order to do this, the city used funds of the local improvement guaranty fund. The deeds, by which the city reacquired title from the county, each recited that the conveyances had been made "in accordance with and as provided for with Chapter 143, Laws of 1929 of the State of Washington." The applicable portion of the statute, to which reference is made in the deeds, is the first proviso of Rem. Rev. Stat., § 9393 (*cf.* RCW 35.49.150). It reads as follows:

"*Provided*, That in any case where property subject to local improvement assessments, or taken over by a city or town on foreclosure of local improvement assessments, shall have been struck off to or bid in by any county at a sale for general taxes, the city or town levying such assessments may, at any time before resale by the county, *acquire such property from the county and receive a deed therefrom therefor upon payment of the face of such taxes with costs without penalty or interest:* . . ." (Italics ours.)

The city sold some of the properties for cash and upon contract. Having received the proceeds, and being entitled to future contract payments, the city placed all of the funds

in the local improvement guaranty fund, and thus excluded district No. 347 and this receivership from any participation therein.

This action was commenced by petition filed in the original receivership proceedings of district No. 347. It prayed that the city be ordered to pay certain funds to this receivership from the amount realized from the sales of the properties involved. By stipulation of counsel adopted as a finding by the trial court, the amount to be paid was agreed upon, if so ordered, so that we are not concerned with the method of prorating the funds between the receivership and the guaranty fund.

Based upon these facts, the city appeals from a judgment ordering it to pay a definite sum into the receivership of district No. 347, as well as a percentage of funds to be realized from contracts of sale and from future sales of some of the properties.

In support of its action, the city first argues that the trust in favor of district No. 347 was terminated as to the properties involved because a *resale* by the county initiated a new title in the city free of assessment liens and claims of district No. 347. With this we cannot agree.

The first enactment of the first proviso of Rem. Rev. Stat., § 9393, was in 1925. Chapter 170, p. 470, Laws of 1925, Ex. Ses. It provided that the city

". . . may, at any time before resale by the county, *redeem* such property from the lien of general taxes upon payment of the face of such taxes with costs without penalty or interest." (Italics ours.)

In 1929, the proviso was amended to read as heretofore quoted. Despite the slight change in the wording, and the substitution of the word "acquire" for "redeem," this court still refers to the process as "redemption." See *State ex rel. King County Water Dist. v. Stacy, supra.* This description is accurate. Redemption is the process of canceling and annulling a defeasible title, such as is created by a mortgage or a tax sale, by paying the debt or fulfilling other conditions. This is exactly what the city did in this case. The

city did not bid nor negotiate. It acquired title on the terms prescribed by the statute, a privilege not given to an individual. The deeds clearly recite that the reacquisition of title was by authority of this proviso of the statute.

If any doubt remains, it is resolved by the statute itself, which provides that the city may acquire title in this manner from the county "at any time *before* resale by the county." Hence, there was not a resale.

The statute grants the privilege of redemption only in the case of property subject to local improvement assessments. The grant is made to enable the city to collect and enforce those assessments. This court said. in *State ex rel. King County Water Dist. v. Stacy, supra*:

"Since *redemption* by a city or town from a general tax foreclosure lien or sale is made for exactly the same purpose and accomplishes the identical result achieved by the city's foreclosure of assessments, the logical conclusion, in our opinion, is that such redemption is, likewise, a part of the 'collection and enforcement' of the assessments. The purpose of such redemption by the municipality is not to enrich the city treasury, because, on redemption, the property is held in trust for the local improvement district for which the redemption is made." (p. 256)

When a resale is made by the county, the proceeds, after taxes, are paid to the city to discharge local assessments. Rem. Rev. Stat., § 9393 (*cf.* RCW 35.49.160). But upon *redemption* the city pays only the taxes and costs. If redemption cuts off all assessment liens, there would be nothing over and above the general tax liens which the county could pay to the city for application to the assessment liens. The city would have title without any duty to enforce the assessments. The assessment liens would, in fact, be destroyed, in direct contradiction to the clear intent of the statute.

Upon redemption, the title returned to the city subject to the same conditions under which it was formerly held. The intervening general tax lien had been removed. The city must deal with the property as it would have dealt with it before the general tax liens were foreclosed. It held the

properties in trust for the various districts. Thus, the proceeds of their sales

". . . shall ratably belong to and be paid into the fund or funds of the local improvement district or districts concerned after first reimbursing any fund or funds having advanced any moneys on account of said property." Rem. Rev. Stat. (Sup.), § 9384 (cf. RCW 35.53.030).

In fact, the city recognized its trusteeship, for in August 1946, which was after redemption but before resale, it granted an easement across one of the properties as trustee for district No. 347 and district No. 5031.

We conclude that there was not a *resale* by the county; that redemption by the city did not destroy the assessment liens nor did it initiate a new title in the city free of local improvement district assessments; and that the city held the properties in trust for the local improvement districts involved.

The city cannot escape this conclusion by urging that Rem. Rev. Stat., § 9351-3 (cf. RCW 35.54.080), requires that *all* proceeds from sales of property obtained by use of guaranty funds for redemption "shall belong to and be paid into the guaranty fund."

The city's argument would be applicable in a case where the properties were solely within the boundaries of districts protected by the fund; but in this case, all the properties lie within the limits of both protected and unprotected districts. The rights of each must be enforced, but not at the expense of one over the other.

By their very nature, the statutes relating to local improvement districts and the enforcement and collection of their assessments are interwoven with the statute establishing the local improvement guaranty fund. They should be construed, if possible, in such a manner as to produce a consistent and workable system.

Rem. Rev. Stat., § 9351-3 (cf. RCW 35.54.080), authorizes redemption by the use of guaranty fund money only when the properties involved are subject to "local improvement assessments, underlying bonds or warrants guaranteed by the fund." Such money cannot be used if the properties

are solely within the boundaries of unguaranteed districts. It does not follow, however, that such funds cannot be used when the properties to be redeemed are within the boundaries of both a guaranteed and an unguaranteed district. The statute does not forbid the use of guaranty funds under such circumstances. To hold that such prohibition existed under the facts of this case would unduly hamper the purpose of the guaranty fund.

The principal purpose of the guaranty fund is to protect the bonds and warrants of districts covered by the fund. That there is an incidental or secondary result which inures to the benefit of another district not protected by the fund, does not necessarily make it wrong to use guaranty fund money, nor does it deprive the guaranty fund of its rights. It is given its full share of protection when, from the proceeds of the sale, its advances are returned as provided by Rem. Rev. Stat. (Sup.), § 9384, and it receives its ratable portion of the proceeds. The ultimate effect is exactly the same as if the city authorities had used some other fund for redemption. See *Clise v. Seattle*, 153 Wash. 661, 280 Pac. 80.

We interpret the final clause of Rem. Rev. Stat., § 9351-3 (*cf.* RCW 35.54.080), which reads:

". . . all proceeds resulting from such sales shall belong to and be paid into the guaranty fund, . . . "

as applying to all proceeds to which the guaranty fund is legally entitled, namely, its prorata share when the property redeemed is within the boundary of a local improvement district protected by the fund, and also within the boundary of a district not protected by the fund. Any other interpretation would provide a method by which the rights of bondholders of unguaranteed districts could be eliminated arbitrarily under the facts of this case.

The judgment is affirmed.

GRADY, C. J., MALLERY, DONWORTH, and OLSON, JJ., concur.