[L. A. No. 26200. In Bank. Oct. 11, 1962.]

H. A. CALL, Plaintiff and Respondent, v. THUNDERBIRD MORTGAGE COMPANY, INC. et al., Defendants and Appellants.

James F. Healey, Jr., Donald J. Burdine, George R. Pfeiffer, Arthur G. Bowman, John R. Engman and Alvin R. Isenberg for Defendants and Appellants.

Benjamin P. Riskin for Plaintiff and Respondent.

McCOMB, J.—This cause was transferred to this court after decision by the District Court of Appeal, Second Appellate District, Division 4. On further examination of the record, we adopt the opinion of that court prepared by Mr. Justice Balthis, with such omissions and additions as hereinafter appear, as and for the opinion of this court. As modified, it reads:

Plaintiff, who acquired an assignment of a mechanic's lien judgment and who later purchased the property involved at the foreclosure sale on such judgment, brought a quiet title action and sought declaratory relief against defendant Thunderbird Mortgage Co., Inc. (hereinafter called "Thunderbird"). The action also named as defendants certain parties who were grantees from Thunderbird and encumbrancers from such grantees. Any reference to defendant in the singular is to defendant Thunderbird in view of the fact that the rights of all other defendants are derivative and are based upon the legal position of Thunderbird. Thunderbird based its claim of title upon a deed from the original owner (and judgment debtor) and upon a certificate of redemption issued by the marshal.

The trial court, sitting without a jury, declined to give effect to the certificate of redemption issued by the marshal

to Thunderbird and rendered judgment in favor of plaintiff, and from this judgment defendants appeal.

The facts may be summarized as follows:

In 1951, Mr. and Mrs. McGinnis (hereinafter referred to as "debtors" or "judgment debtors") purchased a large lot in the Culver City area of Los Angeles from the Oswalds. The McGinnises executed two purchase money deeds of trust in favor of the sellers, a first in the sum of $4,000, and a second in the sum of $1,500. Both deeds of trust were recorded on May 22, 1951.

In connection with a work of improvement on the property, a mechanic's lien in the sum of $315 was recorded by the Colich Construction Company on July 14, 1952 (hereinafter sometimes referred to as the "mechanic's lien"). This claim was assigned to V. O. Matchett for collection; action to foreclose the lien was filed on October 10, 1952; judgment of foreclosure was entered on April 2, 1953.

In addition to the two deeds of trust and the mechanic's lien, there were numerous liens and encumbrances subsequently recorded against the property including judgments, state and federal tax liens and other mechanic's liens, none of which are in dispute here.

The debtors conveyed their land by grant deed to Thunderbird through which deed it now claims its rights as a successor in interest of such judgment debtors. This deed was dated and executed on June 2, 1955, and was recorded February 8, 1957.

The second deed of trust was in default and was assigned by the Oswalds (the original sellers) to V. O. Matchett, who brought a court action to foreclose on October 14, 1954. The defendants named in said action included, among others, the debtors and Thunderbird, who were represented by an attorney, Mr. Isenberg. On May 2, 1957, a judgment of foreclosure was entered in said 1954 action, the amount of the judgment totaling $4,568.85.

Before the foreclosure sale of the second deed of trust Thunderbird, as record owner, decided on a plan whereby it would subdivide the one large lot in question into three smaller residential lots. The plan contemplated that the funds from the proposed sale would be used to pay off all existing encumbrances totaling around $20,000. In early May 1957 plaintiff saw a "for sale" sign on the property; inquired of the realtors the asking price and found they were asking $9,000 per lot, totaling $27,000 for the three; was

directed by a third party to Mr. Riskin who was in the process of foreclosing the second deed of trust for his client Matchett; and entered into an alleged agreement with Mr. Riskin whereby he would be able to obtain the property for about $20,000 by buying up the liens on said property.

On May 23, 1957, prior to the sale, Mr. Riskin obtained an assignment of the mechanic's lien judgment from his client V. O. Matchett for plaintiff. Under instructions from Mr. Riskin to Commissioner R. E. Allen, a sale under the deed of trust foreclosure decree was had on June 10, 1957. Thunderbird and plaintiff Call were the bidders at the sale with Thunderbird being the successful bidder at $6,500. Subsequent to the sale, on June 12, 1957, Mr. Riskin, for plaintiff Call, obtained an assignment of Matchett's right to the proceeds of the sale for the sum of $4,005.17. Plaintiff also took an assignment of the first deed of trust from the Oswalds.

On June 10, 1957, plaintiff through his attorney Riskin issued instructions to the marshal to levy upon and sell the parcel pursuant to the 1953 mechanic's lien judgment of foreclosure. This sale complied with the statutory requirements (notice was posted and publication had), but no notice was given to Thunderbird. On July 12, 1957, plaintiff became the purchaser at that sale of the judgment debtor's interest in the property for the sum of $475.40. It is through this sale that plaintiff asserts his status as successor in interest of the judgment debtor.

It should also be noted that the three lots were sold, one each to the defendants Elmer and Fleming for $9,500 per lot and one to Merch for $8,375. Escrows on these sales were opened in June 1957 and closed on July 31, 1957. Defendants Markworth and Lavoie each hold encumbrances issued by the new purchasers. The title company issued policies of title insurance after Thunderbird on July 5, 1957, agreed to enter into an indemnity agreement whereby Thunderbird agreed to obtain releases of all of the liens and encumbrances disclosed in the preliminary reports of title, including the mechanic's lien judgment and the first deed of trust which was subsequently assigned to plaintiff. By the time this cause was heard in the trial court, the three purchasers had built homes on these lots, which properties, defendant asserts, are now worth over $100,000.

After the escrows were closed on July 31, 1957, Mr. Riskin (on behalf of plaintiff) made demand upon R. E. Allen as commissioner for a certificate of redemption from the second

trust deed foreclosure sale on the basis that plaintiff, by purchasing at the mechanic's lien foreclosure sale, was "the successor in interest of the judgment debtor." The commissioner issued the certificate of redemption upon the payment of the amount of the sale plus interest and this certificate was recorded August 14, 1957.

Prior to the time of redemption Thunderbird offered to pay plaintiff the amount of his mechanic's lien. This tender was refused. Thunderbird then attempted to effect a redemption as "successor in interest" of the judgment debtor by offering to pay plaintiff the amount paid to redeem from the first sale plus the amount of his judgment plus interest. These tenders were refused on the ground that Thunderbird was not a "successor in interest" of the judgment debtor since it did not have a deed executed *after* the sale. The marshal also refused to allow redemption on the authority of *Lawler* v. *Gleason* (1955) 130 Cal.App.2d 390 [279 P.2d 70], which had been called to his attention by Mr. Riskin.

Since the refusal of both Mr. Riskin and the marshal was based upon the fact that Thunderbird's deed was received in 1955, Thunderbird had obtained a quitclaim deed dated September 16, 1957, from the judgment debtors. On the basis of this new deed and other supporting documents, the marshal then allowed Thunderbird to effect a redemption from plaintiff upon payment of the sum of $7,157.79 (representing the amount paid by plaintiff on his redemption plus the amount of his mechanic's lien plus interest).

The trial court in effect concluded that the second deed received by Thunderbird was a nullity and gave it no interest in the land and as a result the redemption from plaintiff was improper. Title was quieted in plaintiff by virtue of plaintiff's certificate of sale on the mechanic's lien foreclosure.

The principal contentions made by defendants on this appeal are: (1) plaintiff had no right to redeem from the trust deed foreclosure sale at which Thunderbird was the purchaser; (2) Thunderbird, as successor in interest to the judgment debtors, had a clear right of redemption from plaintiff as the purchaser at the mechanic's lien foreclosure sale, and having deposited the full redemption price of $7,157.79 and having received the certificate of redemption, it was entitled to judgment in the trial court.

It is helpful to analyze the status of the title and the rights of the parties after the judicial foreclosure of the second deed of trust. ▮▮▮ This foreclosure sale was held June 10, 1957,

and Thunderbird was the purchaser. At this date, Thunderbird was the successor in interest of the debtors because it held a deed from the McGinnises dated June 2, 1955, recorded February 8, 1957. Thunderbird stood in the shoes of the original debtors (trustors) and when it bid in and became the purchaser, it was exactly the same legal situation as though the property had been bid in and purchased by the debtors or owners.

The instant case presents an unusual and rare situation where the record owner (and successor in interest to the debtor) purchases in at the foreclosure sale. However, as will be pointed out, there is no element of fraud involved because subsequent and junior liens are not wiped out by such sale.

The ordinary rule is, of course, that the purchaser at the foreclosure or execution sale takes title as of the date the lien vested and all subsequent or junior liens are eliminated. (See *Bateman* v. *Kellogg*, 59 Cal.App. 464, 474 [211 P. 46].)

The rule is different where the judgment debtor is the purchaser at such foreclosure or execution sale. The legal result is that the lien levied upon or foreclosed is satisfied and discharged, the effect of the sale is terminated, and the property remains subject to subsequent and junior liens.

The situation is analogous to that where a judgment debtor redeems property after an execution sale. The redemption wipes out the effect of the execution sale and the property is still subject to junior liens. The rule and the reasons therefor are clearly pointed out in *Kaiser* v. *Mansfield*, 160 Cal. App.2d 620 [325 P.2d 865], where the court said at page 628: "*A redemption by the judgment-debtor terminates the particular sale in which that redemption is made and restores the estate of the judgment-debtor.* Section 701 of the Code of Civil Procedure provides that redemption may be made by a creditor having a lien or by the judgment-debtor or his successor in interest. Section 703 specifically provides 'if the debtor redeem, the effect of the sale is terminated, and he is restored to his estate.' A redemption by the judgment-debtor's 'successor in interest' has the same effect. . . . These statutes were designed to protect the redemption rights of various parties, not to relieve the judgment-debtor from the payment of his just debts. When a redemption is made by a creditor the junior lien which is wiped out does not represent a debt which is owed by the redeeming creditors. There would be no justice, however, in permitting a judgment-debtor to redeem from a first execution sale and thereby cancel and

wipe out his obligation on other execution liens covering debts which he also owes. We cannot construe these statutes as having that effect and as leading to such a result. The same rule would apply where the redemption from the first sale is made by the 'successor in interest' of the judgment-debtor who stands in his shoes, and is entitled only to the same rights.'' (Italics added.)

Thus, the legal title to the property here, following the foreclosure sale on July 10, 1957, stood in the name of Thunderbird subject, however, to certain liens, including the lien of the mechanic's lien judgment of foreclosure entered April 2, 1953.

The mechanic's lien judgment of foreclosure was not enforced until 1957; the foreclosure sale was held July 12, 1957, and plaintiff was the purchaser at such sale. By this sale, plaintiff acquired the interest of the judgment debtor in the property as it existed at the time the mechanic's lien became effective.

The question presented is whether plaintiff could thereafter legally redeem from Thunderbird as the purchaser at the trust deed foreclosure sale. Ordinarily, a subsequent judgment lien creditor can redeem (Code Civ. Proc., § 701, subd. 2) from a sale on a prior lien because such sale wipes out his lien and he is given the right of protection; however, in the instant case, the subsequent judgment creditor still has his lien, it is not wiped out or eliminated and the rule of redemption is not applicable.

As applied here, plaintiff did not have to redeem from Thunderbird because his lien (and the acquisition of the rights of the judgment debtor by reason of the sale) was effective. Therefore such attempted redemption by plaintiff from the foreclosure sale on the second deed of trust may be disregarded as being ineffective and not necessary to protect plaintiff's rights as purchaser on the foreclosure sale under the mechanic's lien judgment.

Any equity in plaintiff created by the payment to redeem from the trust deed foreclosure sale is fully protected here because the full sum paid by plaintiff to redeem was later returned to plaintiff (and is now held by plaintiff's attorney) upon the later redemption made by Thunderbird from the mechanic's lien judgment foreclosure sale.

We now turn to the principal issue in the case, the legal effect of the mechanic's lien judgment foreclosure sale,

at which plaintiff was the purchaser, and the redemption from such sale by Thunderbird.

As previously stated, this sale was held July 12, 1957; plaintiff was the purchaser thereat and plaintiff thereby acquired all the interest of the judgment debtors in the property at the time the mechanic's lien became effective.

■ Previous to the execution sale, Thunderbird had obtained a deed to the property from the owners and judgment debtors (the McGinnises); the deed was dated June 2, 1955, and recorded February 8, 1957.

This clearly and without any doubt made Thunderbird the "successor in interest" of the judgment debtor (McGinnis) and under section 701, subdivision 1, Code of Civil Procedure, "Property sold subject to redemption . . . may be redeemed in the manner hereinafter provided, by . . . 1. The judgment debtor, or his successor in interest, in the whole or any part of the property." Under the statute Thunderbird had the legal right to redeem. This *right of redemption* follows as a result of the establishment of the status of being a *successor in interest* to the judgment debtor and *the date of the deed* or other conveyance is immaterial. Certainly the statute giving the right of redemption to a successor in interest of the judgment debtor specifies no requirement of the date of such succession in interest. Logically, there is no reason why the succession in interest must follow the execution sale; a judgment debtor may have conveyed the property (and all his interest therein) long before the date of the execution sale (as in the instant case) and the grantee's status as successor in interest gives him *the right of redemption* in order to protect his interest as *owner of the property* in question. ■ A successor in interest has been defined as follows: "A successor in interest of the judgment debtor is one who has acquired (or succeeded to) the interest of the judgment debtor in the property, subject, of course, to the effect of the judgment and sale; . . . A grantee of the mortgagor-defendant, claiming under an unrecorded deed made prior to foreclosure, would be a 'successor in interest,' as would a grantee of the 'judgment debtor' taking by deed after judgment or sale." (Ogden's California Real Property Law, § 17.57, pp. 662, 663.)

To summarize, as shown by the statute, it is the *status* that is the important and determining factor, not the *date* of the deed or conveyance. []¹

---

¹[]Brackets together in this manner are used to indicate deletions from the opinion of the District Court of Appeal.

[Any statements in *Lawler* v. *Gleason*, 130 Cal.App.2d 390 [279 P.2d 70], contrary to the rules announced in this decision are disapproved.][2]

 It is our conclusion that Thunderbird, holding the 1955 deed from the judgment debtors which was recorded February 8, 1957, was a successor in interest to the judgment debtors within the meaning of subdivision 1 of section 701 of the Code of Civil Procedure, and having such *status* it was entitled to redeem from plaintiff who purchased at the mechanic's lien judgment execution sale held on July 12, 1957. Having paid the full redemption price ($7,157.79) and having received the certificate of redemption from the marshal, defendant Thunderbird (and its grantees and their encumbrancers as the other defendants in this action) should have had judgment in the trial court.

Because of the decision made above on the effective and valid redemption made by Thunderbird it is unnecessary to pass upon the other points as to the equities of the parties, as raised on this appeal by Thunderbird.

It appears from the record that plaintiff acquired an assignment of the first deed of trust against the property and that the amount necessary to pay and discharge this encumbrance, the sum of $2,784.93, has been tendered to plaintiff by Thunderbird, and that this amount is now held by Mr. Riskin, as plaintiff's attorney. The trial court made no disposition or ruling as to this item. []

[The judgment is reversed, and the trial court is directed to order (1) that the sum last above mentioned, now held by plaintiff's attorney as trustee, be paid to plaintiff; (2) that plaintiff execute and deliver the proper and necessary papers to bring about a full reconveyance of the property from the first trust deed; and (3) that the sum of $7,157.79, now held by plaintiff's attorney as trustee, be paid to plaintiff, this amount being the full redemption price payable to plaintiff by Thunderbird. In all other respects the judgment should be for defendants on the quiet title and declaratory relief issues, defendants to recover their costs on appeal.]

Gibson, C. J., Traynor, J., Schauer, J., Peters, J., White, J., and Tobriner, J., concurred.

---

[2]Brackets enclosing material (other than editor's added parallel citations) are used to denote insertions or additions by this court.