OLYMPIC FEDERAL SAVINGS & LOAN ASSOCIATION, a corporation; Heritage Auxiliary Company, Inc., a California Corporation, Plaintiffs-Appellants,

v.

Donald T. REGAN, Secretary of the Treasury of the United States; William Williams, Acting Commissioner of the Internal Revenue Service; Thomas Cordoza, Regional Commissioner of the Internal Revenue Service, and the Internal Revenue Service, and the United States of America, Defendants-Appellees.

No. 79–4065.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 17, 1980.

Decided June 22, 1981.

Richard M. Schulze, Walnut Creek, Cal., for plaintiffs-appellants.

Thomas M. Preston, Jr., Dept. of Justice, Washington, D. C., argued, for defendants-appellees; Gilbert E. Andrews, Washington, D. C., on brief.

Before BROWNING, Chief Judge, TRASK, Circuit Judge, and JAMESON,* District Judge.

TRASK, Circuit Judge:

Appellants Olympic Federal Savings and Loan Association and Heritage Auxiliary Company (collectively Olympic) appeal from a summary judgment rendered in favor of the Internal Revenue Service (the Service) on Olympic's action to quiet its title to and prevent the Service from redeeming certain real property. The previous owners of the property had given a deed of trust on it to Olympic as security for a loan. Thus, the redemption apparently extinguished Olympic's security interest. Olympic argues that its interest survived the redemption because the Service acquired only the interest that the previous owners had in the property at the time the redemption was effected. Alternatively, Olympic argues that the redemption is invalid, either because the redemption amount should have been tendered to Olympic as successor-in-interest to the previous owners, or because the Service's right to redeem was extinguished by tender to it of the amount of its tax lien. We affirm.

I

The property in question was originally owned by Mr. and Mrs. Arnold Remmens subject to a deed of trust in favor of United California Bank (UCB). On January 8, 1975, the Service recorded notice of a tax lien against Mr. Remmen's interest in the property. On May 21, 1976, UCB recorded a notice of default against the property.

Title to the property was altered by a number of events which occurred in quick succession in late December, 1976. Mrs. Remmen gave a quit-claim deed for her interest in the property to Thaler. UCB transferred its note and deed of trust to Thaler, who then recorded them in the name of Fries on December 16. On December 20, Fries recorded an assignment of the

note and deed to his wife under her maiden name, Nelson, and Thaler was substituted as trustee on the deed.

A foreclosure sale was held January 21, 1977, at which time the property was sold to Fries for $34,500. Title was recorded in Nelson's name. On March 6, Nelson entered into a deposit receipt and sales contract pursuant to which the property was to be conveyed to the Teeples for $59,950. On April 15, Thaler inquired of the Service whether it would be willing to release the right of redemption that it held by virtue of I.R.C. [26 U.S.C.] § 7425. He was told that he would have to make formal application for such a release. On April 18, before receiving a release from the Service, Nelson deeded the property to the Teeples, who immediately gave a deed of trust to Olympic as security for a loan of $47,950.

On April 28, the Service gave notice of its intention to redeem the property pursuant to section 7425(d). On May 9, two checks in the amount of the Service's tax lien were tendered to the Service on behalf of Thaler, Fries, and the Teeples. The Service did not negotiate or otherwise accept these checks as payment of Mr. Remmens' taxes. On May 11, the Service redeemed the property by tendering $35,843 to the Teeples, who accepted the money. It is not disputed that this amount was statutorily correct. On May 12, the Service recorded a certificate of redemption against the property.

Having lost the security for its loan to the Teeples, Olympic filed suit in the district court, attacking the legality of the Service's redemption. On a motion for summary judgment, however, the district court held that the Service had properly exercised its right of redemption, and that the redemption had operated to pass to the Service unencumbered title to the redeemed property. Olympic appeals from this judgment.

II

A movant for summary judgment must demonstrate the absence of any genuine

* Honorable William J. Jameson, Senior United States District Judge for the District of Montana.

issue of material fact and articulate a viable theory of law under which he is entitled to judgment. *Abramson v. University of Hawaii,* 594 F.2d 202, 208 (9th Cir. 1979); *Pepper & Turner, Inc. v. Shamrock,* 563 F.2d 391, 393 (9th Cir. 1977); Fed.R.Civ.P. 56(c). Because the material facts are not in dispute in this case, we may reverse only if we find that the district court erred in stating or applying the law.

## A

■ Olympic first contends that the Service acquired only the interest that the Teeples had in the property at the time the redemption was effected. Under this theory, the Service would have redeemed the property subject to the deed of trust securing Olympic's loan to the Teeples.

The portion of section 7425 that describes the title taken by the Service as redemptioner is subsection (d)(3)(C): "[Redemption] shall ... transfer to the United States all the rights, title, and interest in and to such property acquired by the person from whom the United States redeems ...."[1] The regulations contain similar language. *See* 26 C.F.R. 301.7425–4(c)(3). Olympic contends that the plain meaning of this provision and the similarity of its description of title to that of a quitclaim deed indicate that the Service redeems subject to existing encumbrances. This, however, only begs the question at issue. The question is not merely whether the Service takes subject to existing encumbrances when it redeems pursuant to section 7425(d), but whether it takes subject to the encumbrances existing at the time of redemption of the property, or those existing at the

time of the property's acquisition by the redemptionee.

The legislative history of section 7425(d) states in part: "Where the government exercises its right of redemption, it must pay the amount paid by the purchaser at the sale plus interest and expenses necessary to maintain the property from the time of sale." S.Rep. No. 1708, 89th Cong., 2d Sess. 27, *reprinted in* [1966] U.S.Code Cong. & Ad.News 3722, 3750. The requirement that the Service pay to the redemptionee interest and maintenance expenses incurred during the pre-redemption period implies that the Service obtains title to the redeemed property retroactive to the date of the execution sale. *See* Plumb, *Federal Liens and Priorities—Agenda for the Next Decade* (Pt. III), 77 Yale L.J. 1104, 1180 (1967) (redemption under § 7425(d) puts United States in shoes of purchaser at execution sale); 33 C.J.S. *Executions* § 263, at p. 552 (1941) (in most jurisdictions a nondebtor redemptioner "merely steps into the shoes of the execution purchaser, and succeeds to what ever right, title or interest the purchaser acquired at the sale as fully ... as if the redemptioner had purchased the certificate of sale"). Thus, when redeeming under section 7425(d), the Service takes the interest that the redemptionee acquired at the execution sale. If the redemptionee did not purchase at the sale, the Service takes the interest that the redemptionee obtained from such purchaser or his successor-in-interest.

The Teeples took the fee to the property, encumbered only by the Service's tax lien, from Nelson, whose husband (and apparent co-venturer[2]) was the purchaser at the exe-

---

1. The statute reads more fully as follows:
   (d) Redemption by United States.—
       (1) Right to redeem.—In the case of a sale of real property to which subsection (b) applies to satisfy a lien prior to that of the United States, the Secretary or his delegate may redeem such property within the period of 120 days from the date of such sale or the period allowable for redemption under local law, whichever is longer.
   \*   \*   \*   \*   \*   \*
       (3) Certificate of redemption.—
   \*   \*   \*   \*   \*   \*

   (C) Effect.—A certificate of redemption executed by the Secretary or his delegate shall constitute prima facie evidence of the regularity of such redemption and shall, when recorded, transfer to the United States all the rights, title, and interest in and to such property acquired by the person from whom the United States redeems such property by virtue of the sale of such property.

2. Olympic does not dispute the Service's statement that Thaler, Fries, and Nelson were co-venturers. The facts support an inference that the three acted in concert.

cution sale. Olympic's encumbrance did not come into existence until after the Teeples acquired the property from Nelson.[3] When the Service redeemed from the Teeples it took the entire fee, because the property was "encumbered" only by the Service's own lien.

Olympic responds that the foregoing analysis depends upon an excessively narrow and literal interpretation of section 7425(d). Another section of the Act, however, has been as narrowly and literally interpreted. See Equity Mortgage Corp. v. Loftus, 504 F.2d 1071, 1076 (4th Cir. 1974) (28 U.S.C. § 2410). Additionally, we note that Olympic's construction of the statute would permit the purchaser at an execution sale to complicate, and possibly totally frustrate, the Service's exercise of its right of redemption merely by encumbering any property subject to such right.

## B

■ Olympic next asserts that the Service's redemption was invalid under the terms of section 7425. Legal title was conveyed to Olympic by the Teeples under the deed of trust that secured Olympic's loan to them. Thus, Olympic argues that it was a successor-in-interest to the Teeples at the time the Service redeemed the property, and, as such, Olympic rather than the Teeples should have been tendered the statutory redemption amount by the Service.

The key issue here is the proper definition of "successor-in-interest." The premise of Olympic's argument is that one succeeds to the property interest of another by acquiring legal title to it. The Service argues that a successor-in-interest is one who acquires at least beneficial and equitable title to property, and that a grantor of bare legal title under a deed of trust has always been viewed as retaining equitable and beneficial title.

California law regarding secured real estate loans has long operated on the "title

theory," under which the lender receives legal title to the security rather than a mere lien against it. Nevertheless, California courts have attached little significance to this distinction; security interests represented by deeds of trust and those evidenced by mortgage liens are treated as if they were legally identical. E. g., Cornelison v. Kornbluth, 15 Cal.3d 590, 125 Cal. Rptr. 557, 563 n.4, 542 P.2d 981, 987 & n.4 (1975); Bank of Italy v. Bentley, 217 Cal. 644, 20 P.2d 940, 944–45 (Cal.1933); Department of Transportation v. Redwood Baseline, Ltd., 84 Cal.App.3d 662, 149 Cal.Rptr. 11, 16 n.6 (1978); Woody v. Lytton Savings & Loan Association, 229 Cal.App.2d 641, 40 Cal.Rptr. 560, 562 n.1 (1964). Consequently, the grantor-trustor under a deed of trust "is generally treated by [California] law as the holder of the title," even though legal title has actually been conveyed to the lender. Bank of Italy v. Bentley, supra, 20 P.2d at 944; accord Bank of America v. Embry, 188 Cal.App.2d 425, 10 Cal.Rptr. 602, 603–04 (1961) (trustor retains complete title and ownership to subject property with trustee receiving only bare legal title sufficient to ensure preservation of loan security in case of default); Comment, Comparison of California Mortgages, Trust Deeds and Land Sale Contracts, 7 U.C.L.A. L.Rev. 83, 94 (1960) (positions of trustor and mortgagor are essentially the same and each should be treated as the legal owner of encumbered property).

The California cases do not identify precisely what it is that makes one a successor-in-interest to the purchaser at an execution sale. They have, however, defined the successor to a judgment debtor as "one who has acquired (or succeeded to) the interest of the judgment debtor in the property, subject, of course, to the effect of the judgment and sale . . . ." Call v. Thunderbird Mortgage Co., 58 Cal.2d 542, 546–47, 25 Cal.Rptr. 265, 375 P.2d 169, 173–74 (1962) (quoting Ogden's California Real Property Law § 17.57, at 662, 663). See also Bate-

---

**3.** Olympic attempts to finesse this point by asserting that the Teeples' acquisition of title to the property and the attachment of Olympic's encumbrance thereto were "contemporane-

ous." This is conceptually inaccurate. The Teeples must have first acquired title to the property themselves before being properly empowered to convey such title to Olympic.

man v. Kellogg, 59 Cal.App. 464, 211 P. 46, 50 (1922). By analogy, then, the successor to the interest of the purchaser at an execution sale is one who acquires the interest that the purchaser himself acquired at the sale.

Under this definition, Olympic is not a successor-in-interest to the Teeples, because it did not acquire all, or even a substantial part, of the interest that the Teeples acquired from Nelson. Although Olympic held legal title to the redeemed property, it possessed hardly any of the rights normally associated with ownership of property. For example, it had no right of possession or enjoyment, it could not devise the property or give it away, nor could it sell the property. See generally Comment, supra, 7 U.C. L.A. L.Rev. at 94–45. Olympic's sole interest in the property was a right to sell it in the event the Teeples defaulted on the conditions of their note. The Teeples retained all other rights, and under California law were considered the owners of the property in all other respects. Accordingly, we hold that the Service was not required to redeem from Olympic rather than the Teeples when it determined to exercise its rights under section 7425.

### C

Finally, relying on Royall v. Virginia, 116 U.S. 572, 6 S.Ct. 510, 29 L.Ed. 735 (1885) Olympic contends that the tender to the Service of the amount of its tax lien operated to void the effect of any subsequent tax collection steps taken by the Service, including exercise of its right to redeem. The Service responds that it had no duty to release its right to redeem upon any such tender, and that, in fact, it had an affirmative duty to exercise its redemption right.

In Royall, an attorney had attempted to pay a state license fee with coupons from a state-issued bond. The state refused to accept the coupons as payment because a state statute, passed after the bonds had been issued, required payment of all state fees in United States money. The Court noted that the bonds were issued on the understanding that they could be used as legal tender for the payment of state debts. 116 U.S. at 578, 6 S.Ct. at 512. Thus, the Court held that the State statute was an unconstitutional impairment of the prior contract between the state and the bondholders. Id. at 578–79, 6 S.Ct. at 512–13. It went on to hold that the attorney could not be found guilty of practicing law without a license, because his offer to pay the license fee in legal tender and his undisputed compliance with the other requirements created a duty in the state to issue him a license, which duty the state had violated. Id. at 579–80, 582–83, 6 S.Ct. at 513, 515.

It is doubtful that an analogous duty on the part of the Service exists in this case. Section 7425 does not provide that the Service's redemption rights shall be extinguished by tender to it of the amount of its tax lien, or, for that matter, by the occurrence of any other event. Olympic argues that in such cases a duty not to redeem exists because the Service has no duty to act on behalf of a taxpayer. Even if it is true, however, that the Service has no duty to act to protect taxpayer interests, it does not follow that the Service is prohibited from acting to protect such interests if it wishes to do so.

Without citation to either the Act itself or its legislative history, Olympic further contends that Congress did not intend that the Service exercise its statutory rights to deprive third parties of legitimate property interests when tax collection interests are not implicated. Olympic argues that tender to the Service of the amount of its tax lien obviated the need for the Service to redeem the property to collect taxes due, thus leaving the Service without a statutorily legitimate basis for exercising the right to redeem. The Service responds that a secondary purpose of section 7425(d) was to protect taxpayers, as well as the Service, from loss of taxpayer equity as a result of underbidding at an execution sale. Authority for the Service's position is also meager. See Equity Mortgage Corp. v. Loftus, 323 F.Supp. 144, 151–54 (E.D.Va.1970) (citing Plumb, supra, 77 Yale L.J. at 1178–79), reversed on other grounds, 504 F.2d 1071 (4th Cir. 1974).

■ Regardless of whether the Service has a duty to act to protect taxpayer interests, we find it unwise to intervene in a regional director's decision about how to satisfy an outstanding tax lien, at least in circumstances such as those in this case: "[T]o require the Government to pick out and foreclose on only those liens which will create the least hardship on third parties, would impose a considerable burden on the revenue collection process." *Kovacs v. United States*, 355 F.2d 349, 351 (9th Cir.), *cert. denied*, 384 U.S. 941, 86 S.Ct. 1460, 16 L.Ed.2d 539 (1966), *quoted with approval in* Plumb, *supra*, 77 Yale L.J. at 1182. *See also id.* n.425. The release of a right of redemption under section 7425 is committed to the sound discretion of the regional director. *See* 26 C.F.R. § 301.7425–4(c)(4). That discretion was not abused here. Accordingly, we hold that the Service did not violate any duty owed to Olympic when it redeemed pursuant to section 7425.

## III

Olympic makes an impassioned plea for reversal based on the seeming injustice of allowing the Service to exercise its right of redemption in this case. It argues that upholding the Service's position in this case will unfairly destroy Olympic's interest in property upon which it relied for security in making a loan.

We are not persuaded that any injustice has resulted from the Service's exercise of its right of redemption. Olympic may properly be charged with notice of the risk that the property on which it relied for security would be redeemed out from under it, leaving it without effective recourse in case of default. The Service's tax lien against the property was duly recorded long before the Teeples and Olympic appeared on the scene. The Teeples acquired the property from the purchaser at an execution sale pursuant to foreclosure under a senior lien. Section 7425(d) clearly states that in such circumstances, the Service has a right to redeem from the purchaser at the execution sale or his successor-in-interest. These are all matters of public record discoverable upon reasonable investigation. *See generally Bank of Hemet v. United States*, 643 F.2d 661 at 665–66 (9th Cir. 1981).

Olympic might have avoided this risk in a number of ways, including requiring further security from the Teeples, insuring the title against the possibility of redemption by the Service, waiting to disburse the loan funds until the Service had unequivocally released its right to redeem, or not making the loan at all. Olympic made the loan in spite of this risk, and that it might incur financial loss as a result is due to faulty business judgment rather than any inequity in the law.

The judgment of the district court is AFFIRMED.