[No. 54588–0. En Banc. February 23, 1989.]

FIDELITY MUTUAL SAVINGS BANK, *Plaintiff,* v. ALBERT MUIN MARK, ET AL, *Petitioners,* THE UNITED STATES OF AMERICA, *Respondent.*

48

*Albert Muin Mark,* pro se, and *Kargianis, Austin & Erickson,* by *Russell A. Austin, Jr.,* and *Bruce A. Wolf,* for petitioners.

*William S. Rose, Jr., Assistant Attorney General of the United States, Gene S. Anderson, United States Attorney,* and *Gary R. Allen, William S. Estabrook, Steven W. Parks,* and *Charles Pinnell, Assistant Attorneys,* for respondent.

DORE, J.—This case involves the redemption of real property sold by the sheriff at an execution sale. We hold that a judgment debtor's statutory right of redemption can be effectively conveyed only through compliance with real property transfer statutes.

## FACTS

In 1971, Fidelity Mutual Savings Bank loaned $50,000 to Albert and Mae Mark and secured the loan with a first mortgage on their house. In 1972, E. Louise Whittall loaned the Marks $10,000 and secured the loan with a second

mortgage on their house. The Internal Revenue Service made various assessments upon the Marks' failure to pay their federal income tax liabilities and filed a notice of tax lien having third priority.

The Marks became delinquent in their payments to Fidelity Mutual and ultimately filed a bankruptcy petition in 1978. During the bankruptcy proceedings, Fidelity Mutual obtained an order granting it the right to foreclose the mortgage. Fidelity Mutual obtained a summary decree of foreclosure in March 1982, expressly waiving a deficiency judgment. After two defective sheriff's sales were set aside, Fidelity Mutual's successor in interest, First Interstate Bank of Washington, on September 16, 1983, purchased the property for the amount of its judgment plus statutory costs and interest for a total of $62,650. In May 1984, the IRS purchased the property from First Interstate. The IRS then executed its own certificate of redemption which was recorded and a copy transmitted to the sheriff. At oral argument the IRS conceded that it did not comply with Washington's redemption statutes and that it had not redeemed from First Interstate.

On June 29, 1984, the Marks' family business, Marks' Westside RX, Inc., filed with the sheriff a notice of its intent to redeem. The notice stated Marks' Westside was the "assignee and successor in interest to Albert Muin Mark and Mae Lim Mark." Clerk's Papers, at 252. It also stated the redemption would occur on July 12, 1984, in the amount of the purchase price of $62,650 with interest, plus any assessment or taxes paid by the purchaser.

The Marks, on July 12, 1984, executed a document entitled "Assignment of Interest," purporting to

grant, bargain, sell, assign, transfer and set over [their] rights, title, and interest unto Marks' Westside . . . [their] successor in interest in [their property] . . .

. . . [T]his assignment includes the right to redeem the property . . . by July 16, 1984, in the proximate amount of $66,826.98.

Clerk's Papers, at 442. The document was not acknowledged or recorded in compliance with Washington's real property transfer statutes.

In the interim, on July 3, 1984, the estate of E. Louise Whittall filed with the sheriff a notice of intent to redeem the property. On July 6, 1984, Whittall's estate tendered a certified check to the sheriff in the amount of $66,039. The sheriff issued a certificate of redemption to Whittall's estate on July 10, 1984. By letter dated July 11, 1984, Whittall's estate advised the sheriff that in the event of a redemption, the estate claimed as a second mortgage, principal in the amount of $10,000, plus interest, costs and fees for a total of $26,711.

On July 12, 1984, Marks' Westside tendered a cashier's check for $66,826 to redeem the property which included the amount of Fidelity Mutual's judgment, plus costs and interest. This sum did not include the amount of Whittall's mortgage. Attached to the tender was a copy of the July 12 "assignment of interest". Later, on July 18, 1984, the Marks executed a quitclaim deed to their property to Marks' Westside as grantee, which was duly acknowledged and recorded.

The sheriff refused to issue a certificate of redemption to Marks' Westside, finding that a justiciable controversy existed. The sheriff referred the matter to King County Superior Court for resolution and deposited the Marks' Westside check into the registry of the court.

On September 7, 1984, the IRS purchased the property from Whittall's estate. Whittall's estate then assigned its certificate of redemption to the IRS. There is evidence in the record indicating that the IRS attempted to redeem from Whittall's estate. At oral argument the IRS again conceded that it purchased the estate's interest in the property and that it had not redeemed.

Whittall's estate and the IRS moved for an order directing the sheriff to issue a deed to the United States. The Marks and Marks' Westside responded with a motion for an order directing the sheriff to issue a deed to Marks'

Westside. The trial court ordered the sheriff to issue a deed to the United States. The Court of Appeals affirmed in an unpublished opinion. We granted the Marks' and Marks' Westside's petitions for discretionary review. We affirm.

### REDEMPTION BY A "SUCCESSOR IN INTEREST"

Redemption signifies the process of canceling and annulling a defeasible title, such as is created by a mortgage, by paying the debt or fulfilling other conditions. *Tacoma v. Perkins,* 42 Wn.2d 80, 85, 253 P.2d 957 (1953). There are two types of redemption. The "equity of redemption" describes the mortgagor's right in equity, after default in the performance of the mortgage, to redeem the estate within a reasonable time upon payment of the debt. The "right of redemption" describes the mortgagor's statutory right to redeem after a judicial foreclosure and sale. The mortgagor has an *equity* of redemption before foreclosure, and the *right* of redemption, if provided by statute, after the foreclosure and sale. 9 G. Thompson, *Real Property* § 4822 (1958); 3 C. Wiltsie, *Real Property Mortgage Foreclosure* § 1060 (5th rev. ed. 1939).

In Washington, the judgment debtor and certain lien creditors are granted the statutory right to redeem property sold at a foreclosure sale. Those with the right to redeem foreclosed property include

> [t]he judgment debtor *or his successor in interest,* in the whole or any part of the property separately sold.

(Italics ours.) Laws of 1899, ch. 53, § 7, p. 89 (former RCW 6.24.130).[1] Here, the Marks acquired the status of the "judgment debtor" because they were adjudged to owe and pay the sum found due in the judgment under which the execution sale was made. Hackman, *Statutory Redemption Rights,* 3 Wash. L. Rev. 177, 178 (1928).

At issue is whether Marks' Westside, by operation of the July 12, 1984 "assignment of interest", is a "successor in

---

[1] In 1987 the Legislature recodified the redemption statutes with amendments. Laws of 1987, ch. 442, pt. VII, p. 1837–46 (RCW 6.23).

interest" to the Marks' right of redemption. The Marks and Marks' Westside concede that the assignment was not acknowledged or recorded in compliance with Washington's real property transfer statutes. They argue, however, that the statutory right of redemption is personal property that can be assigned without complying with the deed statutes. We agree that the right of redemption is not an interest in land, but a mere personal privilege given by statute to the mortgagor. 2 L. Jones, *Mortgages of Real Property* § 1335, at 798 (8th ed. 1928); 3 C. Wiltsie, *Real Property Mortgage Foreclosure* §§ 1067–1068 (5th rev. ed. 1939); *see In re Faber*, 11 F. Supp. 555, 558 (W.D. Wash. 1935).

The California Supreme Court has defined a "successor in interest" to the judgment debtor as "one who has acquired (or succeeded to) the interest of the judgment debtor in the property, subject, of course, to the effect of the judgment and sale . . ."[2] *Call v. Thunderbird Mortgage Co.*, 58 Cal. 2d 542, 550, 375 P.2d 169, 25 Cal. Rptr. 265 (1962); *see* 2 Washington State Bar Ass'n, *Real Property Deskbook* § 48.79, at 48–43 (2d ed. 1986). Under this definition, the status of a "successor in interest" for the purpose of former RCW 6.24.130 arises in relation to the property sold at the foreclosure sale. Although the right of redemption is not an interest in real property, the Legislature has linked the exercise of the right to the judgment debtor's ownership interest in the property. Thus, former RCW 6.24.130 requires that a successor in interest succeed to the judgment debtor's interest in the property.

A judgment debtor–mortgagor retains legal title to the property during the redemption period. As observed in *W.T. Watts, Inc. v. Sherrer*, 89 Wn.2d 245, 248, 571 P.2d 203 (1977), "a sheriff's certificate of purchase does not pass title but is only evidence of an inchoate interest which may

[2]A successor in interest may be a grantee, a trustee under the trust deed, the purchaser of the mortgagor's interest at a receiver sale, or the purchaser at an execution sale acquiring title. 2 Washington State Bar Ass'n, *Real Property Deskbook* § 48.79, at 48–43 (2d ed. 1986).

or may not ripen into title." *Accord, Gray v. C.A. Harris & Son,* 200 Wash. 181, 186, 93 P.2d 385 (1939). Title to real property can only be conveyed by a valid, acknowledged deed and the conveyance must be recorded in the county where the property is situated. RCW 64.04.010, .020. Here, Marks' Westside is not a successor in interest to the Marks' right of redemption because the unacknowledged and unrecorded July 12, 1984 "assignment of interest" was insufficient to convey the Marks' interest in the property.

Our cases have consistently recognized that a valid conveyance is necessary to transfer the right of redemption. *See, e.g., Gray,* at 187; *Ford v. Nokomis State Bank,* 135 Wash. 37, 45–46, 237 P. 314 (1925); *DeRoberts v. Stiles,* 24 Wash. 611, 618–20, 64 P. 795 (1901); *accord, Perry v. Safety Fed. Sav. & Loan Ass'n,* 25 Ariz. App. 443, 445, 544 P.2d 267 (1976). To hold otherwise would permit a judgment debtor to convey the naked right to redeem without also conveying the debtor's reversionary interest in the property. This would create great uncertainty in dealing with real property as a judgment debtor could sell the right of redemption to any number of people, none of whom would be in a position to verify if they were the sole holders of this valuable right. Moreover, permitting an assignee to exercise the right of redemption without having any other interest in the property is inconsistent with the legal effect of a redemption. The effect of redemption is to set aside the sale and restore the judgment debtor to the estate. Laws of 1961, ch. 196, § 2, p. 1896 (former RCW 6.24.160). To allow an assignee without an interest in the property's title to redeem would accomplish nothing since any redemption would inure to the benefit of the holder of legal title—the judgment debtor–mortgagor.

Marks' Westside had not succeeded to the Marks' statutory right of redemption when it attempted to redeem on July 12, 1984 and therefore its attempted redemption was invalid. The statutory redemption period has now passed without a valid redemption by the Marks or Marks' Westside.

54

EQUITABLE REMEDY

The Marks argue that we should extend the period of time in which to redeem the property on equitable grounds.

Traditionally, equitable principles were not utilized to relieve a party from the failure to properly exercise the privilege of redemption. In *Kuper v. Stojack,* 57 Wn.2d 482, 483, 358 P.2d 132 (1960) we stated:

> "The right to redeem property sold under execution is not an equitable right created or regulated by principles of equity. It is a creature of statute and depends entirely upon the provisions of the statute creating the right."

(Citations omitted.) Consistent with this view, Washington courts have declined to join the growing trend among courts to extend the statutory redemption period upon a showing of equitable grounds. *See Schmidt v. Worley,* 134 Wash. 582, 587–88, 236 P. 111 (1925); *Majer v. Fosseen,* 15 Wn. App. 687, 689, 551 P.2d 757 (1976). In both cases, the courts did not reach the question because the parties seeking equitable relief failed to make any showing that they were entitled to such relief.

In recent years, the rule that redemption rights must be exercised in strict accord with the statutes creating the right has been tempered by the application of equitable principles. In *GESA Fed. Credit Union v. Mutual Life Ins. Co.,* 105 Wn.2d 248, 254, 713 P.2d 728 (1986) we rejected the *Kuper* line of cases. There, we fashioned an equitable exception to the redemption statute and held that the right of redemption is not forfeited where the party redeeming substantially complies with the redemption statute. The court rejected the argument that applying equitable principles to the redemption statute would foment litigation and delay title determinations after foreclosure. We recognized that the administrative advantages of inflexibly applying the redemption statute did not outweigh the resulting injustice in a particular case. *GESA Fed. Credit Union,* at 254–56.

 This case is distinguishable from *GESA,* however. In that case, we held:

The redemption statute involves a number of provisions, some of which confer a statutory right, *e.g.*, *RCW 6.24-.130*, and some of which establish a procedure by which that right is perfected, *e.g.*, RCW 6.24.145. "A statute is remedial when it relates to practice, procedure, or remedies *and does not affect a substantive or vested right.*" Moreover, it has long been the practice in this state to liberally construe *remedial* legislation to accomplish legislative purpose.

(Citations omitted. Some italics ours.) *GESA Fed. Credit Union*, 105 Wn.2d at 254–55. In *GESA*, our resort to equity was proper because the statute at issue was remedial. Here, however, the statute at issue creates a substantive right. Consequently, we may not alter the scheme the Legislature has established.

It may seem harsh to deny equity to the Marks. After the sheriff had deposited their tendered funds in court, it was probably impossible to raise sufficient funds in time to attempt a proper redemption. However, to balance the equities in every unsuccessful case of redemption would create confusion in a highly complex area of law. The rights established by the Legislature must remain exclusive if they are to remain reliable.

### Conclusion

We hold that Marks' Westside's attempted redemption on July 12, 1984 was invalid because the unacknowledged deed was ineffective to transfer the Marks' statutory right of redemption to Marks' Westside. The time period for an effective redemption has now passed.

Affirmed.

BRACHTENBACH, PEARSON, and ANDERSEN, JJ., and CUNNINGHAM and HAMILTON, JJ. Pro Tem., concur.

CALLOW, C.J. (dissenting)—The majority misapplies the equitable principle articulated in *GESA Fed. Credit Union v. Mutual Life Ins. Co.*, 105 Wn.2d 248, 713 P.2d 728 (1986). In *GESA*, a purchaser at an execution sale failed to file a statement of the taxes paid on the property with the

county auditor, as required by former RCW 6.24.150. 105 Wn.2d at 250. However, because the purchaser had given the redeemer actual notice of the taxes paid, we held that the purchaser had met the purpose of the notice requirement and therefore had substantially complied with the redemption statute. 105 Wn.2d at 253, 257.

The majority correctly characterizes *GESA* as standing for the principle that "the right of redemption is not forfeited where the party redeeming substantially complies with the redemption statute." However, the majority then creates an exception to this equitable principle, apparently applicable only to former RCW 6.24.130, stating that that section "creates a substantive right." The majority finds that Marks' Westside violated former RCW 6.24.130 and, therefore, it holds that *GESA*'s substantial compliance rule does not apply.

I disagree. The legislative purpose underlying former RCW 6.24.130(1)'s limitation on the right to redeem to the "judgment debtor or his successor in interest" is to restrict the right to redeem to those with a direct interest in the subject property. Marks' Westside *did* become a successor to the Marks' interest in this property when the Marks executed and recorded the quitclaim deed on July 18, 1984. *Gray v. C.A. Harris & Son,* 200 Wash. 181, 93 P.2d 385 (1939). Marks' Westside became a successor in interest before the expiration of the statutory redemption period, and thereby complied with the substantive provisions of former RCW 6.24.130.

Marks' Westside erred only because it tendered its redemption payment prematurely, a few days before it formally became a successor in interest to the property. Its early payment violated the technical redemption *procedure* set forth in former RCW 6.24.180.

Significantly, respondent Internal Revenue Service has never suggested that Marks' Westside's procedural default in any way actually harmed its interests. Accordingly, *GESA* mandates that this technical error be excused. "Where a party, in exercising its redemption right, commits

a technical but harmless procedural error, a forfeiture requirement is not only unjust, but inconsistent with the very purpose of the statute." *GESA*, 105 Wn.2d at 256. The majority's forfeiture of Marks' Westside's right of redemption directly contravenes our decision in *GESA*.

I would hold that Marks' Westside substantially complied with the redemption statutes when it received title to the subject property by an acknowledged quitclaim deed within the redemption period. I would also hold that Marks' Westside tendered payment in the correct amount to properly redeem.

Former RCW 6.24.160 governs the amount a judgment debtor must pay in order to redeem from a redemptioner. That statute provides in relevant part:

> If no redemption be made within the redemption period . . . the purchaser or his assignee is entitled to a conveyance; or, if so redeemed, whenever sixty days have elapsed, and no other redemption has been made . . . and the time for redemption has expired, the last redemptioner or his assignee is entitled to a sheriff's deed; but in all cases the judgment debtor shall have the entire redemption period . . . to redeem the property. *If the judgment debtor redeem he must make the same payments as are required to effect a redemption by the redemptioner.*

(Italics mine.) Laws of 1961, ch. 196, § 2, p. 1896.

The IRS contends that the italicized sentence requires the judgment debtor (Marks' Westside) to tender an amount sufficient to satisfy the lien held by the last redemptioner (Whittall's estate's lien) *in addition to* tendering the amount paid out by the last redemptioner (Whittall's estate's redemption payment). However, the plain language of the italicized sentence indicates otherwise, for it requires the judgment debtor to pay only the amount paid by *the* redemptioner to redeem the property.

The use of the definite article indicates that "the redemptioner" refers to the redemptioner mentioned in the section's previous sentence—"the last redemptioner [otherwise] entitled to a sheriff's deed". "Consequently, when a

58

judgment debtor redeems from the last redemptioner, he must pay whatever amount such last redemptioner paid." *Prince v. Savage,* 29 Wn. App. 201, 207, 627 P.2d 996 (1981). This construction works no hardship on the redemptioner; on redemption by the judgment debtor, his lien reattaches to the property. Former RCW 6.24.160; *DeRoberts v. Stiles,* 24 Wash. 611, 618–19, 64 P. 795 (1901).

Marks' Westside formally became a successor to the Marks' interest in the property within the redemption period, in substantial compliance with the redemption statutes. It tendered payment in the proper amount. We should not forfeit its redemption rights merely because it tendered the redemption payment a few days prematurely.

I dissent.

UTTER, J., concurs with CALLOW, C.J.

Reconsideration denied June 14, 1989.