[No. 54863–3.   En Banc.   August 25, 1988.]

THE STATE OF WASHINGTON, *Respondent*, v. WALLACE V.
TEUSCHER, ET AL, *Defendants*, PUREGRO, INC.,
ET AL, *Appellants*.

*Roy F. Kussmann* and *Malcolm C. Lindquist* (of *McGavick, Graves, Beale & McNerthney*), for appellant Puregro, Inc.

*Matsen, Cory, Sprague, Layman & Wirt*, by *Alexander W. Wirt*, for appellant Crocker Equipment Leasing Co.

*Taylor & Hintze, William L. Hintze*, and *Terry E. Miller*, for appellant Badger Mountain Irrigation Dist.

*Kenneth O. Eikenberry, Attorney General*, and *John T. Hurley, Assistant*, for respondent.

PEARSON, C.J.—This case involves an eminent domain proceeding initiated by the State of Washington. The issues in this case are the result of a jury determination of fair market value lower than the amount tendered by the State in connection with a Stipulated Order for Immediate Use and Possession of certain properties in Benton County. The money tendered by the State was withdrawn by the property owner and disbursed to various respondent lien creditors. The principal question involves to what extent the lien creditors must repay the State for the difference between the verdict and the amount tendered and withdrawn as provided for in RCW 8.04.092.

In 1982 the State sought acquisition for highway construction of approximately 190 acres from a total parcel of 2,255 acres owned by a limited partnership entitled Badger Mountain South, Ltd. (hereinafter landowner). The land was encumbered by a number of liens, three of which are relevant to this appeal. Crocker Equipment Leasing Company (hereinafter Crocker) is a lessor of farm irrigation

equipment to whom the landowner had executed a mortgage to secure annual lease payments. It is unclear from the record what, if any, security interest attached to the 190–acre parcel. Puregro, Inc., was a judgment creditor which held a judgment lien on property owned by the landowner. Again, it is unclear from the record which specific property this lien was against. Badger Mountain Irrigation District (hereinafter Irrigation District) apparently was owed assessments on the entire parcel of land owned by the landowner, including that portion condemned by the State. All three of these creditors ultimately were named as respondents in the State's action to condemn the 190 acres. No determination has ever been made as to the actual dollar amounts owed to these creditors with respect to the portion of land taken by the State.

On December 14, 1982, a Stipulated Order for Immediate Use and Possession was entered which ordered that at such time as the State deposited $575,000 into the registry of the court as its offer, the State was awarded immediate possession and use of the parcel sought to be condemned. The order allowing immediate use was signed by all respondents or their attorneys and incorporated by reference RCW 8.04.090–.094.[1] The entire order (after naming 55 respondents) reads:

---

[1]RCW 8.04.090 provides, in pertinent part:

"In case the state shall require immediate possession and use of the property sought to be condemned, and an order of necessity shall have been granted, and no review has been taken therefrom, the *attorney general may stipulate with respondents in accordance with the provisions of this section and RCW 8.04.092 and 8.04.094 for an order of immediate possession and use, and file* with the clerk of the court wherein the action is pending, *a certificate* of the state's requirement of immediate possession and use of the land, *which shall state the amount of money offered to the respondents and shall further state that such offer constitutes a continuing tender of such amount.* . . . The court without further notice to respondent shall enter an order granting to the state the immediate possession and use of the property described in the order of necessity, which order shall bind the petitioner to pay the full amount of any final judgment of compensation and damages which may thereafter be awarded for the taking and appropriation of the lands . . . described in the petition and for the injury, if any, to the remainder of the lands . . . from which they are to be taken by reason of such taking and

It Is Hereby Ordered That at such time as the deposit of the sum of Five Hundred Seventy–Five Thousand and no/100 Dollars ($575,000.00) is paid into the registry of the court by the petitioner as its offer, the State of Washington shall have, and is hereby awarded and granted immediate possession and use of the parcel of property particularly described as item No. 2 in Exhibit "A" attached to the petition on file herein, according to the terms and conditions of RCW 8.04.090 through 8.04-.094, which terms and conditions and description are incorporated by reference herein.

The order made no arrangements for any withdrawal or disbursement of the State's offer.

---

appropriation, after offsetting against any and all such compensation and damages the special benefits, if any, accruing to such remainder by reason of the appropriation and use by the state of the lands . . . described in the petition. *The moneys paid into court may at any time after entry of the order of immediate possession, be withdrawn by respondents, by order of the court, as their interests shall appear.*"

RCW 8.04.092 provides, in pertinent part:

"*The amount paid into court shall constitute just compensation paid for the taking of such property: Provided, That respondents may,* in the same action, *request a trial for the purpose of assessing the amount of compensation* to be made and the amount of damages arising from the taking. . . . If, pursuant to such hearing, the verdict of the jury, unless a jury is waived by all parties, or decision of the court, awards respondents an amount in excess of the tender, the court shall order the excess paid to respondents with interest thereon from the time of the entry of the order of immediate possession, and shall charge the costs of the action to the state. If, pursuant to the trial, the verdict of the jury or decision of the court awards respondents an amount equal to the tender, the costs of the action shall be charged to the state, and *if the verdict or decision awards an amount less than the amount of the tender,* the state shall be taxed for costs and *the state, if respondents have accepted the tender and withdrawn the amount paid into court, shall be entitled to a judgment for the difference;* otherwise, the excess on deposit shall be returned to the state."

RCW 8.04.094 provides, in pertinent part:

"*If any respondent shall elect to demand a trial for the purpose of assessing just compensation* and damages arising from the taking, he shall so move within sixty days from the date of entry of the order of immediate possession and use . . . In the event that no such demand be timely made or having been timely made, shall not be brought to trial within the limiting period, the court, upon application of the state, shall enter a decree of appropriation for the amount paid into court under the provisions of RCW 8.04.090, as the total sum to which respondents are entitled, and such decree shall be final and nonappealable." (Italics ours.)

On December 30, 1982, an Order for Disbursement was presented by an attorney for the landowner and signed by a superior court judge for Benton County. That order of disbursal was granted on the basis of stipulations for disbursement of funds individually signed by each of the three creditors whereby they agreed certain amounts could be distributed to them out of the tendered offer in the registry of the court. Apparently, at the time the court signed the stipulated order dividing the possession and use fund, no evidence was submitted establishing the respective interests of the parties in the land taken. The State was not a participant in the stipulated order for disbursement.

On December 17, 1982, prior to the order of disbursal, the Attorney General filed a Certification for Immediate Possession wherein it was certified that the $575,000 tender offer from the State had been refused. All parties to this appeal agree that only the landowner sought a trial determination as to fair compensation. None of the other respondents sought such a determination. The jury verdict returned on May 20, 1983, awarded $391,000 as just compensation for the condemned 190 acres, $184,000 less than the State's tendered offer.

The judgment presently appealed from was entered August 22, 1986. That judgment found that the State had made an overpayment of $184,000, the difference between the State's offer of $575,000 and the final jury verdict of $391,000. Additionally, respondent Irrigation District was ordered to repay into the registry of the court the sum of $210,271, and Crocker, Puregro, and Borg–Warner (not a present appellant) were ordered to repay into the registry of the court 32 percent of the amounts previously distributed to them. It was further ordered that partners in Badger Mountain South and Triangle Land Co. (its general partner) shall be jointly and severally liable for the entire judgment of $184,000 (subject to limited partnership liability law). The judgment further found that "respondents" had consented to the creation and recording of a lien "against the remainder in the amount of the fair market of

the property taken plus the damages, if any, to the remainder, plus interest at the rate established by RCW 8.25.230 which lien the respondents failed to record". The judgment also found that the Irrigation District subsequently has acquired all rights to the remaining property *free of the special benefits lien.* Nonetheless, the judgment provided that any funds in excess of the $184,000 owed to the State were to be retained in the registry of the court as security for special benefits, if any, which might have accrued to the subject remainder.

A number of issues arise as a result of this protracted and somewhat confusing condemnation proceeding. The creditors argue that because they did not elect to demand a judicial determination on fair compensation they should not be liable on a judgment in favor of the State as a result of a jury verdict which was less than the State's tender offer. They further argue that no judgment can be entered for overpayments until there has been a hearing and determination on the interests of each respondent. It is also argued that the establishment of a security fund for special benefits has no basis in the eminent domain statutory scheme.

The threshold question is whether a secured creditor with no proprietary interest in the property but with a lien interest in condemned land ever has the right to elect a judicial determination of fair compensation for the property sought to be taken. A lien is not a proprietary interest or estate in the land. *State v. Spencer,* 90 Wn.2d 415, 422, 583 P.2d 1201 (1978). Since the lien is not a proprietary interest, but is a remedy against the land, a legislature may constitutionally impair a remedy so that when land subject to a lien is taken by eminent domain the holder of a lien is not necessarily entitled to be made a party. 2 J. Sackman, *Nichols on Eminent Domain* §§ 5.17, 5.19 (3d ed. 1985). The question therefore becomes whether Washington's eminent domain statute, RCW 8.04, allows a secured creditor to demand a judicial determination on just compensation. RCW 8.04.010 requires that a petition for

appropriation shall set forth each owner, *encumbrancer,* or other person interested in the property sought to be condemned. RCW 8.04.020 similarly requires that notice shall be served on each person named as owner, *encumbrancer,* or tenant. RCW 8.04.092 provides that "respondents" may request a trial for the purpose of assessing the amount of compensation to be made. RCW 8.04.094 states: "If *any* respondent shall elect to demand a trial for the purpose of assessing just compensation . . . he shall so move within sixty days". (Italics ours.) There is no differentiation in RCW 8.04 between different classes of respondents. Clearly, the secured creditors were properly named as respondents in this action. It is only fair that an encumbrancer have the right to demand a judicial determination of fair compensation if his interests so require. As a practical matter, it is probably rare that a secured creditor would have the financial incentive to litigate the issue of just compensation, but it certainly is not inconceivable that he might have a sufficient interest. If the property had encumbrances which in the aggregate exceeded the State's tender offer, a junior lienholder might have ample motivation to contend the property is worth more than the State's offer. We therefore hold an encumbrancer with a security interest in the property sought to be taken does have a statutory right to demand a trial on the issue of just compensation.

It follows that if an encumbrancer with a security interest in the property has a statutory right to demand a judicial determination, the encumbrancer also has the right not to elect to demand a judicial determination. Respondent's choices include the right to accept the State's offer, not participate in a trial which another respondent requests, take its share of the tendered offer, and consider the matter settled.

Here, the encumbrancer–respondents did not demand a trial. They were therefore entitled to accept their respective shares of the State's tendered offer without being subject to a deficiency judgment resulting from a jury's award in a trial demanded by other respondents. There are, however,

issues in this case requiring resolution before these principles can be applied. First, the creditor–respondents allegedly withdrew greater amounts than were due them for loss of their security interests in the property condemned. RCW 8.04.090 provides, "[t]he moneys paid into court may at any time after entry of the order of immediate possession, be withdrawn by respondents, by order of the court, *as their interests shall appear*". (Italics ours.) Each creditor stipulated with the landowner as to the amount it was accepting from the registry of the court. Each of those creditors had also signed the stipulation for immediate use and possession with the State which put them on notice that the agreement was subject to the terms and conditions of RCW 8.04.090–.094. RCW 8.04.092 states: "[I]f the verdict or decision awards an amount less than the amount of the tender . . . the state, if respondents have accepted the tender and withdrawn the amount paid into court, shall be entitled to a judgment for the difference".

Even though we agree with the creditors' position that they had a right to elect to accept the State's offer and not have to go to trial, it does not follow that they can withdraw *more* than their proper share of the State's offer and be immune from any liability for repayment of a percentage of that excess amount.[2] Therefore, the issue of what constituted each creditor's interest in the property must be determined by the trial court on remand. To the extent that a respondent has received from the State's offer only his fair share of the offer, he may retain that amount and is not liable to refund any portion of that amount. Once the trial court has determined to what each lienholder was entitled, the sum of those amounts must be deducted from the State's offer of $575,000 because only that remainder

---

[2]We find no merit in Puregro's contention that it cannot be held liable for any repayment to the State because it did not receive pleadings and documents in the just compensation trial demanded by the landowner. Its liability is predicated upon its receipt of funds from the State's offer and its participation in the stipulation which put it on notice that a potential repayment to the State was possible under RCW 8.04.092, not on its participation or lack of participation in the trial.

was put at risk by the owner's election to demand a trial. Only then can the final jury award of $391,000 be compared to the remainder of the State's offer to determine the deficiency. Once the trial court determines the percentage by which the State overpaid, then each creditor and owner shall be ordered to refund to the State that percent of the amount he withdrew which was in *excess* of the amount rightfully withdrawn in accordance with his lien interest in the 190 acres.

Of course, before a creditor's share of the tendered offer can be determined, a determination must be made as to the claimant's individual interest in the property taken. No such determination has yet been made. Instead, the judgment treats the Irrigation District differently than it treats the other two lien creditors in that it orders the District to return all funds received in excess of the amount alleged by the State to have been due on the property condemned. With respect to the other creditors, it orders a repayment only of the percentage by which the State's offer exceeded the jury award with no determination of those creditors' actual interest in the condemned land. *State v. Spencer,* 90 Wn.2d 415, 583 P.2d 1201 (1978) made it clear that the original jury verdict awarding the total lump sum damage is not a final resolution of the interests of the various claimants. These creditors have not yet had their day in court to determine their respective interests, and it is therefore improper to resolve these issues by the form of judgment prior to those determinations.

In determining a creditor's interest, we note that it is not entirely clear from prior Washington case law how a lienholder's interest is to be valued in the event of a partial taking of the secured property. Only those with proprietary interests have estates in the land and only those with such interests share in equitable apportionment of an award, whereas the security interest is simply paid off as a debt of the estate. *Spencer,* at 422. However, what portion of the lien need be "paid off" in the event of a partial taking of an encumbered parcel is computed differently in different

jurisdictions. In some states, when only a part of mortgaged land is taken, the mortgagee has a claim upon the award to the extent necessary to satisfy the entire amount of the mortgage. *See* 2 J. Sackman, *Nichols on Eminent Domain* § 5.18[1] (3d ed. 1985) and cases cited therein. This method seems ill advised as it could cause inequitable results for the proprietary owner. Under another view the mortgagee is required first to exhaust his remedy against the remainder of the property and any claim would be predicated upon the establishment of a deficiency. *See* 2 J. Sackman § 5.18[1]. This method is unnecessarily harsh and cumbersome for the secured creditor. This court has held that a condemnation award stands in place of property taken and a mortgage is held to operate as an equitable lien on the award, thereby resulting in partial taking situations in "two separate incumbrances, the legal mortgage lien on the remainder of the land and the equitable mortgage lien on the award.'" *State v. Hemmingson*, 57 Wn.2d 635, 638, 359 P.2d 154 (1961) (quoting *In re Dillman*, 276 Mich. 252, 258, 267 N.W. 623 (1936)). The court in *Hemmingson* also suggests that the extent to which the encumbrancer's security has been affected is an important factor in determining the amount of the equitable lien on the condemnation award. *Hemmingson*, at 639. Therefore, in determining the value of an individual creditor's security interest in the land taken, the trial court shall consider what portions of the encumbrances on the entire parcel are attributable to the 190 acres which were condemned.

A final issue which arises concerning the August 22, 1986, judgment is whether the State is entitled to require a repayment from these creditors in an amount exceeding the difference between the jury verdict and the offer (as reduced by the lien amounts accepted by the creditors) in order to establish a security fund in case the State can prove special benefits accrued to the remaining property. The judgment stated that (1) the "respondents" elected, pursuant to RCW 8.25.220(4), to establish the fair market

value of the property without offsetting the amount of special benefits accruing to the remainder of the property (the judgment must be using "respondents" to mean landowner–respondents as the creditor–respondents were not present at trial when any such election allegedly occurred); (2) the respondents failed to record the lien; (3) Badger Mountain Irrigation District subsequently has acquired all rights, title and interest to the remaining property free of the special benefits lien; and (4) any amount returned to the registry of the court exceeding $184,000 owed to the State should be retained as security for special benefits, if any may have accrued to the remainder.

RCW 8.25.220 provides that

> [w]henever land . . . is to be taken . . . for a highway . . . and the amount offered as just compensation includes a setoff in recognition of special benefits accruing to a remainder portion . . . the property owner shall elect one of the following options:
>
> . . .
>
> (4) Demand a trial . . . to establish the fair market value of any property taken . . . without offsetting the amount of any special benefits accruing to a remainder of the property.
>
> The selection of the option set forth in subsections . . . (4) . . . is subject to the consent by the property owner to the creation and recording of a lien against the remainder in the amount of the fair market value of any property taken . . .

The creditors argue that no lien was ever created or recorded, it is doubtful any special benefits in fact accrued to the remaining lands, and there is no statutory authority for creation of a security fund for special benefits. We agree. There are a number of reasons why such a security fund is improper. The election available to landowners in RCW 8.25.220(4) is only required if the State's offer included a setoff in recognition of special benefits. The State's offer here did not include any such setoff. Therefore, the landowner should not have been put to the election under RCW 8.25.220. However, evidently during trial

the State raised the issue of special benefits and the land-owner apparently agreed to consent to a special benefits lien. Even assuming that by this agreement the landowner waived its right to object to the imposition of a lien, no lien ever arose as a consequence of the eminent domain trial. As the Attorney General explained at oral argument, prior to any judgment being entered and prior to any lien ever being created, the Irrigation District had foreclosed on the land and the State acquired no lien on the land. The Benton County Superior Court judgment also recognized no special benefits lien was created. The Attorney General further explained that the State only intended to use a special benefits argument as rebuttal to the landowner's argument that the land near Kennewick still had viable use as residential development and therefore was worth in excess of $2 million. Apparently the State argued its value was based only on agricultural use due to the state of the economy in the area. The jury appears to have agreed with the State since its verdict matched the State's $391,000 valuation.

██ Whether any special benefits accrued to these remaining lands is not an issue before the court. Certainly the value of any such benefits is not an issue on appeal. The only issue is whether the trial court's order creating a security fund is proper. Nothing in RCW 8.04 or 8.25 creates any authority for the diminishment of a jury award in order to create a security fund for special benefits accruing to remainder lands. Provisions of RCW Title 8 are to be strictly construed, both as to the extent of the State's power thereunder and to the manner of its exercise. *State ex rel. Sternoff v. Superior Court,* 52 Wn.2d 282, 297, 325 P.2d 300 (1958). The right to exercise the power of eminent domain is one which must be established by statute. The legislative body must not only confer the power but must also prescribe the method by which it is done. *PUD 1 v. Washington Water Power Co.,* 43 Wn.2d 639, 262 P.2d 976 (1953). RCW 8.25.210, the purpose section regarding special benefits to remaining property, provides:

It is the purpose of this 1974 act to provide procedures whereby more just and equitable results are accomplished when real property has been condemned for a highway, road, or street and an award made which is subject to a setoff for benefits inuring to the condemnee's remaining land.

The statute then proceeds to lay out very specific procedures whereby special benefits liens may be created or released and whereby the issue can be litigated. Creation of a security fund in advance of any determination as to the existence or value of special benefits undermines this statutory scheme. This court explained in *State v. Green,* 90 Wn.2d 52, 56, 578 P.2d 855 (1978):

There is obvious inequity in allowing a present offset of yet–to–be constructed special benefits. Some benefits may eventually accrue to the property while others may not. And, the value of the special benefit is, to a degree, speculative prior to completion of any construction project. . . . [The Legislature] has prescribed a bifurcated proceeding by which valuation of special benefits is separately determined. The separate valuation proceeding helps insure against speculative special benefit offsets.

Therefore, we reverse the trial court's order creating a security fund which was to be held in the registry of the court pending determination of the existence of any special benefits.

In conclusion, we hold that creditor–respondents in eminent domain proceedings have a statutory right to demand a trial, and therefore the option of not participating in a trial on fair compensation. If such respondents opt out of participation in a trial requested by another respondent, they are entitled to a share of the tendered offer which represents their interest in the condemned property. Because those interests have not been determined, we remand with instructions to the trial court to determine the creditors' respective interests and from those interests to determine their proper share of the State's tender offer. Finally, in accordance with our analysis given above, the

trial court must determine the correct deficiency amount and from that calculate the amount each respondent must repay the State.

UTTER, BRACHTENBACH, DOLLIVER, DORE, ANDERSEN, CALLOW, and DURHAM, JJ., concur.

Reconsideration denied November 10, 1988.