[No. 26405-6-II. Division Two. May 24, 2002.]

CAPITAL INVESTMENT CORPORATION OF WASHINGTON, *Appellant,* v. KING COUNTY, *Respondent.*

*Kenneth W. Masters* and *Charles K. Wiggins* (of *Wiggins Law Offices, P.L.L.C.*) and *Scott A. Candoo*, for appellant.

218

*Norm Maleng, Prosecuting Attorney*, and *Janine E. Joly, Deputy*, for respondent.

Morgan, J. — In *Fidelity Mutual Savings Bank v. Mark*,[1] the Washington Supreme Court held that a judgment debtor could not transfer a right to redeem without also transferring the underlying interest in the land. In this case, we analogously hold that a redemptioner by judgment lien may not transfer a right to redeem without also transferring the underlying judgment. The trial court so ruled, and thus we affirm.

## FACTS

<u>Judgments</u>: In 1997, there were three judgments against Eric Piltz. The judgment creditors were (or would become)[2] David Ordell, 5-11 Properties, and Judgment Enforcement Administration (JEA).

<u>Liens</u>: Each of the three judgments was a lien against Piltz's King County real estate, which included some apartments on East Olive Avenue in Seattle (hereafter "the East Olive property"). It appears from subsequent events that Ordell's lien was superior; that 5-11's was next; and that JEA's was inferior.

<u>Order of sale</u>: In September 1997, Ordell obtained an order of sale from the King County Superior Court. The order directed the King County Sheriff to sell the East Olive property, subject to redemption, to satisfy Ordell's unpaid judgment.

---

[1] *Fid. Mut. Sav. Bank v. Mark*, 112 Wn.2d 47, 767 P.2d 1382 (1989).

[2] The judgment ultimately held by JEA was originally obtained by someone else, who later assigned it to JEA. The same is true of the judgment ultimately held by 5-11. The original holder of each judgment is immaterial to this discussion. For convenience, we refer to 5-11's judgment as if held at all times by 5-11, and to JEA's judgment as if held at all times by JEA.

Sale: In December 1997, the King County Sheriff held an execution sale at which Ordell was the successful bidder. Ordell paid $38,346, and the sheriff issued a certificate of purchase. The superior court confirmed the sale, and four redemptions followed.

First redemption: In late May 1998, JEA notified the sheriff that it intended to redeem from Ordell. The sheriff notified Ordell, who stated the amount needed to redeem. In late June 1998, JEA paid $40,573 and received a certificate of redemption.

Second redemption: A few weeks after JEA redeemed from Ordell, 5-11 notified the sheriff that it intended to redeem from JEA. The sheriff notified JEA, which stated the amount needed to redeem. In late August 1998, 5-11 paid $41,071 and received a certificate of redemption.

Third redemption: JEA wanted to re-redeem from 5-11, but it lacked the $135,000 that it needed to do that. Thus, it arranged to borrow $158,000 from Capital Investment Corporation of Washington (CICW). As security, JEA gave a written assignment in which it stated:

> Judgment Enforcement Agency . . . hereby assigns to [CICW], for security purposes, all of JEA's right, title and interest in and to that certificate of redemption evidencing the redemption of certain real property located at 1205 & 1211 East Olive, Seattle, Washington, . . . together with all of JEA's right, title and interest in and to such property, and together with the rents, profits and proceeds thereof, including the proceeds of any re-redemption of such property.[3]

---

[3] Clerk's Papers (CP) at 57. In addition to the written assignment, JEA gave CICW a deed of trust against the East Olive property and a U.C.C. (Uniform Commerical Code) financing statement. The deed of trust was ineffective because JEA did not then own, and did not thereafter acquire, the East Olive property. *See, e.g., McGill v. Shugarts*, 58 Wn.2d 203, 204, 361 P.2d 645 (1961) (grantors "could convey by deed no greater interest than they owned"); *Sofie v. Kane*, 32 Wn. App. 889, 895, 650 P.2d 1124 (1982) ("grantor can convey no greater title or interest than he or she has in the property"); *cf. McKelvie v. Hackney*, 58 Wn.2d 23, 31, 360 P.2d 746 (1961) ("one cannot sell what one does not own"). The U.C.C. financing statement was ineffective because JEA was attempting to transfer a lien against real estate, and Article 9 of the Uniform Commercial Code does not apply to that type of transaction. Former RCW 62A.9-104(j) (1997). We do not further consider or discuss either document.

JEA did not assign, as security or otherwise, its judgment against Piltz or its judgment lien against Piltz' East Olive property.

JEA signed the loan documents on October 26, 1998. The same day, CICW delivered to the King County Sheriff cashier's checks for the redemption amount, a letter on CICW's letterhead, and, we assume for purposes of this appeal, a copy of the assignment quoted above.[4] The letter stated:

> Judgment Enforcement Agency wishes to complete its redemption of the real property known as 1205 & 1211 East Olive, Seattle, Washington . . . . To effectuate that redemption, we hand you for the account of Judgment Enforcement Agency the following:
>
> 1. Cashiers checks totaling $134,714.19; and
>
> 2. A copy of an Assignment of Certificate of Redemption for Security Purposes evidencing a security interest in Judgment Enforcement Agency's certificate of redemption in favor of Capital Investment Corporation of Washington.
>
> Please issue the certificate of redemption in favor of Judgment Enforcement Agency . . . . Please retain the copy of the Assignment of Certificate of Redemption in your files, as evidence of Capital Investment Corporation's security interest. In the event the property is re-redeemed, you should contact . . . Capital Investment Corporation regarding payment and satisfaction of that security interest.
>
> If the property is not re-redeemed, please issue your Sheriff's deed to Judgment Enforcement Agency . . . .[5]

On November 2, 1998, the sheriff gave JEA a certificate of redemption.

Fourth redemption: On November 10, 1998, the judgment debtor, Piltz, quitclaimed to 5-11 all of his right, title, and

---

[4] The parties dispute whether the assignment was actually enclosed with the letter. We assume it was because we must take the facts in the light most favorable to CICW. *Sec. State Bank v. Burk*, 100 Wn. App. 94, 97, 995 P.2d 1272 (2000).

[5] CP at 50.

interest in the East Olive property. On November 16, 1998, 5-11 notified the sheriff that it had acquired Piltz's interest and intended to exercise Piltz's right to redeem. The sheriff notified JEA—but not CICW—and JEA stated that $245,030 would be needed to redeem. 5-11 paid the $245,030, and 5-11 acquired the property as Piltz' successor in interest.[6] The sheriff forwarded the $245,030 to JEA—which then did *not* pay CICW.

Effects: An example drawn from the *Washington State Bar Association's Real Property Deskbook* describes the effects of these redemptions. It states:

"An illustration of the California [Washington][7] scramble system may be valuable at this point. Suppose A, B, C, and D are lienors on certain property with A being the senior mortgagee, B the second in priority, C third, and D fourth. At A's foreclosure sale following an action to which B, C, and D were parties, A bids in for the full amount of his lien and thereby becomes the purchaser of the property. After the sale C redeems from A by paying the amount A paid plus expenses, taxes, and other amounts allowed by statute. A's lien was extinguished by the foreclosure sale so he cannot re-redeem from C, but B still has an unsatisfied lien and can redeem. If B redeems he must pay the purchase price, expenses, and any liens held by C which are senior to B's lien. Assuming no expenses have been paid by C, B need only pay what C paid plus interest since C's lien is junior to the lien under which B seeks to redeem. Since C's lien is still unsatisfied, he may now re-redeem from B by paying what B paid, interest, expenses, and the amount of B's lien, since B's lien is senior to the lien of C. Should the mortgagor now desire to redeem from C, he must pay the amount which C paid (the purchase price plus the amount of B's lien, which C now owns), expenses, and also the

---

[6] RCW 6.23.040(2) ("If the judgment debtor redeems, the effect of the sale is terminated and the estate of the debtor is restored."); RCW 6.23.010(2) (term "judgment debtor" includes judgment debtor's "successor in interest"); *see Fid. Mut. Sav. Bank*, 112 Wn.2d at 53 (holding that judgment debtor may not transfer right to redeem without also transferring his or her estate in the land; implying the converse).

[7] Alteration in original. According to the Washington Supreme Court, Washington's redemption scheme is "almost identical" to California's. *Burwell & Morford v. Seattle Plumbing Supply Co.*, 14 Wn.2d 537, 543, 128 P.2d 859 (1942).

amount of C's lien. Since D cannot now redeem because the effect of the sale has been terminated by the mortgagor's redemption, the statute provides that D's still unsatisfied lien will reattach to the property. The mortgagor now holds the property subject only to D's lien."[8]

Here, A is Ordell; B is 5-11; C is JEA (or CICW, if CICW is JEA's successor in interest); and D does not exist.

Lawsuit: In February 2000, CICW sued JEA and the sheriff. It alleged that JEA had failed to repay the $158,000 loan, and that the sheriff, "[i]n negligent dis-regard [sic] of the security documents," had "wrongfully delivered" $158,000.00 to JEA.[9] JEA defaulted and is not involved in this appeal. The sheriff moved for summary judgment, and the trial court granted the motion. CICW then filed this appeal.

## DISCUSSION

On appeal, CICW claims that the sheriff had duties to notify it of the impending fourth redemption, and to pay it $158,000 of the $245,030 required to make that redemption. The sheriff denies owing any duty to CICW.

When umpiring a redemption, a sheriff has a conditional duty to notify and a conditional duty to pay. RCW 6.23.080(1) provides:

(1) The person seeking to redeem shall give the sheriff at least five days' written notice of intention to apply to the sheriff for that purpose. It shall be the duty of the sheriff to notify the purchaser or redemptioner, as the case may be, . . . of the receipt of such notice . . . . At the time specified in such notice, the person seeking to redeem may do so by paying to the sheriff

---

[8] 3 Wash. State Bar Ass'n, Real Property Deskbook § 46.15(4) (3d ed. 1996) (quoting Darryl A. Hart, *The Statutory Right of Redemption in California*, 52 Cal. L. Rev. 846, 851 (1964)). *See also* 5 Richard R. Powell, Powell on Real Property § 38.09[3], at 38-58 to 38-60 (1998); 27 Marjorie Dick Rombauer, Washington Practice: Creditors' Remedies—Debtors' Relief § 3.19, at 161-70 (1998); 28 Marjorie Dick Rombauer, Washington Practice: Creditors' Remedies—Debtors' Relief §§ 7.65-7.73, at 160-72 (1998).

[9] CP at 5.

the sum required. The sheriff shall give the person redeeming a certificate stating the sum paid on redemption, from whom redeemed, the date thereof and a description of the property redeemed.

RCW 6.23.070 provides that after the sheriff receives the sum required to redeem, he or she shall forward that sum "to the person from whom the property is redeemed."

The sheriff owes these conditional duties to the person from whom the redemption is being made. In the case of a first redemption, that person is the purchaser, or his or her successor in interest.[10] In the case of a second or subsequent redemption, that person is the redemptioner who last redeemed the property, or that redemptioner's successor in interest.[11] CICW was not the purchaser here, so the sheriff owed duties to it only if it was (1) a "redemptioner" or (2) the "successor in interest" of a redemptioner.

## I

█ The first question is whether CICW was a redemptioner. RCW 6.23.010 provides:

(1) Real property sold subject to redemption . . . may be redeemed by the following persons, or their successors in interest:

(a) The judgment debtor . . . .

(b) A creditor having a lien by judgment, decree, deed of trust, or mortgage . . . subsequent in time to that on which the property was sold. The persons mentioned in this subsection are termed redemptioners.

(2) As used in this chapter, the terms "judgment debtor," "redemptioner," and "purchaser," refer also to their respective successors in interest.

---

[10] RCW 6.23.020(1) (subject to exceptions not pertinent here, judgment debtor or redemptioner can redeem from purchaser); RCW 6.23.010(2) (term "purchaser" refers also to purchaser's "successor in interest").

[11] RCW 6.23.040(1) (judgment debtor or redemptioner can redeem from another redemptioner); RCW 6.23.010(2) (term "redemptioner" refers also to redemptioner's "successor in interest").

This statute plainly requires that a redemptioner be a creditor of the judgment debtor, as opposed to the creditor of another redemptioner or someone else. CICW was never a creditor of Piltz, so it was never a redemptioner either.

## II

 The next question is whether CICW was a redemptioner's (i.e., JEA's) "successor in interest." Although the legislature did not define that phrase in chapter 6.23 RCW, the words themselves suggest that a "successor in interest" is one who has acquired or succeeded to an interest once held by a predecessor.[12] When the predecessor is a redemptioner, his or her relevant interest is the right to redeem that emanates from the lien of his or her judgment, decree, deed of trust, or mortgage against the judgment debtor. At first glance then, a redemptioner's successor in interest is one who has acquired or succeeded to the redemptioner's judgment, decree, deed of trust, or mortgage.

This reasoning finds support in the law of this and other states. In the Washington case of *Fidelity Mutual Savings Bank v. Mark*,[13] the Marks owned real estate that was subject to liens held by Fidelity, Whittall, and the Internal Revenue Service (IRS). Fidelity bought the property at a sheriff's sale, subject to redemption, for $62,650. Several months later, the Marks assigned their right to redeem to Westside. They also executed a quitclaim deed by which they purported to convey to Westside their remaining interest in the land. The deed was ineffective, however, because the Marks failed to acknowledge or record it as required by Washington's real estate transfer statutes.

---

[12] *See* BLACK'S LAW DICTIONARY 1431-32 (6th ed. 1990) (successor in interest is "[o]ne who follows another in ownership or control of property," or one who "retain[s] the same rights as the original owner"); *Fid. Mut. Sav. Bank*, 112 Wn.2d at 52 (judgment debtor's "successor in interest" is " 'one who has acquired (or succeeded to) the interest of the judgment debtor in the property' ") (quoting *Call v. Thunderbird Mortgage Co.*, 58 Cal. 2d 542, 550, 375 P.2d 169, 173, 25 Cal. Rptr. 265 (1962)).

[13] 112 Wn.2d 47.

Based on the assignment and invalid deed, Westside then attempted to redeem as the Marks' "successor in interest." Rejecting this attempt, the Washington Supreme Court held that "the naked right to redeem" could not be separated from "the debtor's reversionary interest in the property," and that a person could not succeed to a judgment debtor's right to redeem unless he or she successfully acquired the judgment debtor's underlying interest in the land.[14] To hold otherwise, the court explained, "would permit a judgment debtor to convey the naked right to redeem without also conveying the debtor's reversionary interest in the property," and "create great uncertainty in dealing with real property."[15] The Marks had not effectively transferred their "reversionary interest in the property," so Westside had not succeeded to their right to redeem.

In the Arizona case of *Perry v. Safety Federal Savings & Loan Ass'n of Kansas City*,[16] the Harveys mortgaged their property to Safety. Safety foreclosed its lien and purchased the property subject to redemption. The Harveys purported to transfer their remaining interest in the property to the Perrys, but they failed to acknowledge or record the deed as required by Arizona's real property transfer statutes. The Perrys attempted to redeem, arguing that they were the Harveys' "successor in interest." Disagreeing, the Arizona Court of Appeals ruled that "the Perrys did not acquire the interest of the judgment debtors Harvey in the mortgaged premises because of their failure to obtain a properly acknowledged deed in compliance with [Ariz. Rev. Stat.] § 33-401B."[17] Accordingly, they "did not become 'successors in interest' within the meaning of the redemption statute," and they "were not entitled to redeem the property for the amount of the first judgment."[18]

---

[14] 112 Wn.2d at 52-53.

[15] 112 Wn.2d at 53.

[16] 25 Ariz. App. 443, 544 P.2d 267 (1976).

[17] 544 P.2d at 269.

[18] 544 P.2d at 269.

In the Iowa case of *Central Life Assurance Society v. Spangler*,[19] Central purchased the Spanglers' farm at a sheriff's sale. The Spanglers validly deeded their remaining interest in the farm to their adult son. The son then tendered the amount needed to redeem, claiming that he had succeeded to his parents' right to redeem. Holding that he could redeem, the Iowa Supreme Court said, "We have held many times that the ownership of real estate and the right of redemption thereof are inseparable, and in a sense identical, in that they are parts of the same thing."[20] The court went on to hold that the parents' deed had effectively conveyed their interest to the son; that he was their successor; and thus that he could redeem.

In the Idaho case of *Hieb v. Mitchell*,[21] the sheriff sold land that Hieb bought, subject to redemption. One of the redemptioners was Farmers Home Administration (FHA), which held a junior mortgage and lien. Because of federal regulations, FHA could transfer its mortgage only with the Secretary of the Treasury's approval, which FHA did not have. To overcome this impediment, FHA assigned its right to redeem—but not its mortgage—to Mitchell. Thus armed with a "naked right to redeem,"[22] Mitchell then sought to redeem from Hieb. Hieb resisted and sued for an order declaring that Mitchell was not a qualified redemptioner. Mitchell acknowledged that he was not a creditor of the judgment debtor with a lien by judgment or mortgage, and that he was not a transferee of FHA's mortgage. He claimed, however, that he was FHA's "successor in interest" because he now held its naked right to redeem. Construing a statute almost identical to ours, the Idaho Supreme Court held that Mitchell was not FHA's "successor in interest" because he had not been "assign[ed] the note and mortgage"

[19] 204 Iowa 995, 216 N.W. 116 (1927). Iowa does not use Washington's "scramble" system of redemption, but that makes no difference here.

[20] 216 N.W. at 117.

[21] 117 Idaho 1075, 793 P.2d 1247 (1990).

[22] *See Fid. Mut. Sav. Bank*, 112 Wn.2d at 53.

on which FHA's right to redeem was based.[23] A concurring justice added:

> [T]he right of redemption, when there is such a right, is not an independent right. Rather, it is a right dependent upon a creditor's having acquired a lien either by a recorded judgment or by a recorded mortgage, and [it] cannot be separated from the mortgage or the judgment, as the case may be. It is not susceptible to being independently transferred.[24]

In the Colorado case of *Beckhart v. HTS Properties, LLC*,[25] HTS held a mortgage on an apartment house. After foreclosing, it bought the apartment house at the sheriff's sale, subject to redemption. Under Colorado law, the judgment debtor and three tenants each had a right to redeem.[26] The judgment debtor made no attempt to exercise or assign his right to redeem. Each of the three tenants purported to assign his or her right to redeem to one Beckhart, but to retain all of his or her other rights in the underlying lease. Beckhart attempted to redeem from HTS, but HTS resisted. Ruling that Beckhart had no right to redeem, the Colorado Court of Appeals said:

> Other states with similar statutes have uniformly concluded that the statutory right of redemption may not be assigned separate from the underlying lease or other interest in the real property. The reasoning is that the statutory language expressly refers only to those who hold interests in the real property. Further, permitting such an assignment could create uncertainty in dealing with the property. Finally, the statutory goal of encouraging full value bidding at the foreclosure sale

---

[23] 793 P.2d at 1250.

[24] 793 P.2d at 1251 (Bistline, J., concurring in part, dissenting in part). The dissenting portion of this opinion related to reasonable attorney fees, a matter not pertinent here.

[25] 981 P.2d 208 (Colo. Ct. App. 1998), *cert. denied*, No. 99SC109 (Colo. July 12, 1999).

[26] COLO. REV. STAT. § 38-38-302 (judgment debtor can redeem within 75 days of sale); COLO. REV. STAT. § 38-38-303 (lienors can redeem, in order of priority, after 75 days); COLO. REV. STAT. § 38-38-305 (lessee "shall be considered as a lienor"). Colorado's redemption scheme is "ordered" rather than "scrambled," but that makes no difference here.

would be undermined if speculators could avoid the sale and instead purchase redemption rights for a nominal price, as occurred here.

We find this reasoning persuasive. Therefore, we agree with the trial court that our statutory scheme does not permit the right of redemption to be severed from the property interest it serves.[27]

According to all five of these cases, the right to redeem cannot be severed from the interest that underlies it, and neither a judgment debtor nor a redemptioner can effectively transfer "the naked right to redeem"[28] without also transferring the interest that underlies such right. According to the first three cases, a judgment debtor can effectively transfer his or her right to redeem only if he or she also transfers his or her underlying interest in the land.[29] According to the last two cases, a redemptioner whose lien is by deed of trust or mortgage can effectively transfer his or her right to redeem only if he or she also transfers his or her underlying note and deed of trust or mortgage.[30] Analogously, a redemptioner whose lien is by judgment can effectively transfer his or her right to redeem only if he or she also transfers his or her underlying judgment.[31]

In addition to finding support in the cases, our reasoning finds support in logic and practicality. Suppose that the sheriff sells a judgment debtor's land that is subject to judgment liens held by A, B, and C in that order of priority. A obtains an order of sale and a sheriff's sale ensues. At that sale, A purchases the land, subject to redemption, for the amount of A's lien. C later redeems from A by reimbursing A for the purchase price and costs. B later redeems from C by reimbursing C for the purchase price and costs. C

---

[27] 981 P.2d at 209-10 (citations omitted).

[28] *Fid. Mut. Sav. Bank*, 112 Wn.2d at 53.

[29] *Fid. Mut. Sav. Bank*, 112 Wn.2d at 53; *Perry*, 544 P.2d at 269; *Spangler*, 216 N.W. at 117.

[30] *Hieb*, 793 P.2d at 1250; *Beckhart*, 981 P.2d at 209-10.

[31] *See Hieb*, 793 P.2d at 1251 (Bistline, J., concurring in part, dissenting in part).

wants to redeem from B but lacks the necessary funds. To obtain those funds, C assigns X its right to redeem but not its judgment. X gives notice to the sheriff, who gives notice to B, that X is C's assignee and that X will redeem from B in 30 days. During those 30 days, C goes out and fully satisfies his judgment by executing on *other* property of the judgment debtor (which C can do, of course, because C still holds his judgment). C's judgment lien no longer exists, C is no longer a redemptioner within the meaning of RCW 6.23.010(1)(b), and C himself should not be able to redeem from B. But can X, the purported assignee, still redeem? The answer should be no—but to so hold is to say that X did not receive a meaningful right, and he cannot recoup whatever he paid C. If X is to receive a meaningful and effective right—and if C is to be prevented from assigning X a "right" that C can later pull out from under X's feet[32]—the law should require, and it does require, that C transfer not just his "naked right to redeem," but his underlying judgment also.

In this case, JEA purported to transfer its right to redeem, as represented by its certificate of redemption and the proceeds of any re-redemption. At the same time, it purported to retain its judgment against Piltz. This was not permissible, and its assignment was ineffective. CICW did not become JEA's "successor in interest," and the sheriff did not owe any duty to CICW.

■ ■ This result is not altered by the fact that JEA purported also to assign "all of [its] right, title and interest in and to [the East Olive] property."[33] The holder of a lien does not have any right, title or interest in the land the lien encumbers; in the words of our Supreme Court:

"[A] lien is a charge upon property for the payment or discharge of a debt or duty. . . . [I]t confers no general right of property or

---

[32] *Cf. Mercantile Ins. Co. of Am. v. Jackson,* 40 Wn.2d 233, 236, 242 P.2d 503 (1952) (revocable assignment not effective against third party); *Amende v. Town of Morton,* 40 Wn.2d 104, 106, 241 P.2d 445 (1952) (same); *Sundstrom v. Sundstrom,* 15 Wn.2d 103, 108, 129 P.2d 783 (1942) (same).

[33] CP at 57.

title upon the holder; on the contrary, it necessarily supposes the title to be in some other person."[34]

Before the sheriff's sale, JEA had a judgment lien with a duration of 10 years from date of judgment, renewable for another 10.[35] After the sheriff's sale, JEA had a judgment lien that would terminate when a redemptioner junior to JEA or the judgment debtor redeemed from JEA, or the time to redeem expired, whichever occurred first, unless the judgment debtor redeemed (and terminated the effect of the sale) while JEA still had its right to redeem.[36] At neither time did JEA have an ownership interest or estate in the East Olive property. Necessarily then, JEA's attempt to assign such an interest or estate was not effective.[37]

Nothing we have said means that CICW did or did not acquire rights against JEA. We hold only that CICW was not a redemptioner, or the successor in interest of a redemptioner, within the meaning of RCW 6.23.010. Based

---

[34] *Swanson v. Graham*, 27 Wn.2d 590, 597, 179 P.2d 288 (1947) (quoting 33 Am. Jur. 419, § 2); *see also State .v. Teuscher*, 111 Wn.2d 486, 491, 761 P.2d 49 (1988) ("[a] lien is not a proprietary interest or estate in the land"); *Sullins v. Sullins*, 65 Wn.2d 283, 285, 396 P.2d 886 (1964) ("a lien is an encumbrance upon the property as security for the payment of a debt"); *Mueller v. Rupp*, 52 Wn. App. 445, 450, 761 P.2d 62 (1988) ("[a] lien, like a mortgage, is . . . personal property").

[35] *See* RCW 4.56.190-.200.

[36] *See* 3 Wash. State Bar Ass'n, Real Property Deskbook § 46.15(4); 27 Rombauer, *supra* note 7, at 169-70. It may be possible to express the same concepts by saying that JEA's judgment lien was *extinguished* at the sheriff's sale and *replaced* by a right to redeem with the features stated in the text. *See, e.g., Millay v. Cam*, 135 Wn.2d 193, 198, 955 P.2d 791 (1998) ("When a mortgage is foreclosed and the property sold under execution, junior lien creditors *whose liens have been extinguished by the sale have the statutory right to redeem the property* from the purchaser.") (emphasis added). Under the redemption statute, however, an otherwise qualified junior lien continues after the sheriff's sale and forms part of the postsale compensation that must be paid by another redemptioner. *E.g.,* RCW 6.23.020(2)(d), .040(3). Such a lien also reattaches if the judgment debtor redeems before the lienholder does. *See* RCW 6.23.040(2); 3 Wash. State Bar Ass'n, Real Property Deskbook § 6.15(4). For these reasons, we use the terminology in the text.

[37] *See Morse Electro Prods. Corp. v. Beneficial Indus. Loan Co.*, 90 Wn.2d 195, 198, 579 P.2d 1341 (1978); *Home Indem. Co. v. McClellan Motors, Inc.*, 77 Wn.2d 1, 3, 459 P.2d 389 (1969) ("assignee of a chose in action takes only those rights held by his assignor"); *Young v. Am. Can Co.*, 131 Wash. 374, 376, 230 P. 147 (1924) ("assignor can assign no greater interest in the contract than he himself has"); *Havsy v. Flynn*, 88 Wn. App. 514, 519, 945 P.2d 221 (1997) (assignee "cannot recover more than [assignor] could recover").

on those holdings, we conclude that the sheriff did not owe any duty to CICW under Washington's redemption statutes, and that the trial court did not err by summarily dismissing the sheriff from this case.

CICW's remaining arguments lack merit or need not be reached.

Affirmed.

SEINFELD and HOUGHTON, JJ., concur.